[No. 24543-1-I.   Division One.   December 17, 1990.]

THE COALITION ON GOVERNMENT SPYING, *Appellant,* v.
KING COUNTY DEPARTMENT OF PUBLIC SAFETY,
ET AL, *Respondents.*

*Stephen Strong* and *Bendich, Stobaugh & Strong,* for appellant.

■■■■■■■■
■■■■■■■■

*Norm Maleng, Prosecuting Attorney,* and *Mary F. Perry, Deputy,* for respondents.

■■■■■■■■■■■■

WEBSTER, J.—This case concerns interpretation of the Washington public disclosure act (WPDA). The Coalition on Government Spying (COGS) appeals two orders in favor of the King County Department of Public Safety (Department). COGS asserts that the trial court erred: (1) in ruling that neither party prevailed and that COGS, therefore, was not entitled to an award of attorney fees, costs, or penalties, and (2) in determining that disclosure of additional documents was a moot issue. We reverse.

## FACTS

In 1978, pursuant to the WPDA, COGS requested from the Department copies of records pertaining to the Department's relationship with the Law Enforcement Intelligence Unit (LEIU). The requested records included historical information and organizational materials about LEIU, executive board minutes, articles and bylaws, procedures and policies, legislative and regulatory information, and financial statements. The Department's attorney initially conceded that many of the documents were not exempt. Nonetheless, the Department denied nearly all elements of the request because LEIU refused permission to disclose the records. The Department maintained that the records were the property of LEIU and that its contract with LEIU prevented disclosure. In response to these contentions, COGS named LEIU as an additional party. LEIU was subsequently dismissed from the suit. Despite its initial concession, the Department continued to refuse disclosure, asserting that the records were exempt.

In 1979, to learn the Department's grounds for withholding the records, COGS asked the trial court to order submission of a page–by–page itemization and a more detailed

justification for withholding records pursuant to RCW 42.17.310(4) and 42.17.340(1). Alternatively, COGS asked to participate in the court's in camera review of records. The trial court denied COGS's motion for a detailed explanation of the reasons for withholding the records. Furthermore, it ruled that COGS's "viewing of these documents *in their current unexpurgated form* would be detrimental to effective law enforcement and that a viewing [was] unnecessary since adequate disclosure *for discovery purposes* [had] been made." (Italics ours.) The trial court did not decide, however, whether the various records, or portions of them, were exempt.

During 1980, COGS negotiated with the Department to obtain release of the records. On December 16, 1980, the Department released 250 pages of LEIU documents. The Department stated that it was disclosing the records "for the purpose of settlement and compromise of this action," without agreeing they were disclosable. The only documents both requested by COGS and identified as withheld by the Department were LEIU financial statements.

In 1981 and 1982 COGS conducted further discovery, and in 1984, it filed an affidavit describing the contents of the records released. In 1986, after the case had been totally inactive for 2 years, the Clerk of the Superior Court sent COGS notice that the case would be dismissed under CR 41(b)(2) unless COGS took action or showed good cause why the case should not be dismissed. At that juncture, COGS filed an arbitration request, stating it would waive all claims for the purpose of arbitration except its claim for attorney fees, costs, and penalties. The Department responded by arguing that arbitration was inappropriate because COGS sought relief other than a money judgment in its complaint and no final determination had been reached. Based on the Department's arguments, the case was removed from arbitration.

In 1988, the Superior Court directed the parties to submit a joint status report. The Department moved to dismiss all of COGS's claims with prejudice under the theories of

"laches, mootness, equitable estoppel, waiver, res judicata, and collateral estoppel," contending that the action was rendered resolved and moot on several occasions. The Department characterized the trial court's 1979 ruling as proof that the documents sought were exempt. It also argued that it was prejudiced because COGS delayed in prosecuting its claims, attorneys handling the case were no longer with the Department, and the file had been closed on two separate occasions. In response, COGS argued that the trial court merely ruled in 1979 that the Department had sufficiently complied with COGS's discovery requests. Furthermore, COGS asserted the Department's attorney had admitted that the records at issue were still in his office. On June 6, 1988, the trial court summarily dismissed the disclosure claims with prejudice, stating that the disclosure issue "was essentially moot since 1979." The trial court ruled, however, that the issue of attorney fees, costs, and penalties still remained for trial.

On July 22, 1988, a trial was held on the issue of whether COGS had prevailed. The trial court limited testimony to this question, declining to hear evidence on attorney fees, costs, and penalties until after deciding which party had prevailed. The trial court found that the Department had not properly withheld the 250 pages of records because they were not exempt.[1] Regardless of this finding, the trial court held that the WPDA "contemplates an award of attorney fees only where there was an order or judgment and failure to respond pursuant to that order or judgment." The trial court, thus, held that neither party prevailed and denied COGS any award.

COGS filed a motion for reconsideration of the June 6, 1988, and July 22, 1988, rulings, which was denied. As one of its exhibits, COGS submitted a deposition proving that

---

[1]Although the trial court did not reach the issue of whether COGS was entitled to an award under the penalty provision of RCW 42.17.340(3), it estimated that the Department would have required approximately 3 months to expurgate and prepare the records.

the Department still had the LEIU financial records at issue.[2]

## DISCUSSION

The first issue is whether the trial court erred in determining that COGS did not prevail and, therefore, was not entitled to an award of attorney fees, costs, or penalties.

The WPDA states in part:

> Any person who *prevails against an agency in any action in the courts* seeking the right to inspect or copy any public record shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed twenty–five dollars for each day that he was denied the right to inspect or copy said public record.

(Italics ours.) RCW 42.17.340(3). In the instant case, the Department disclosed the records COGS requested only after COGS had filed a lawsuit and initiated several negotiations with the Department. At no time, however, did either party ask the trial court to rule on whether the disclosed records were exempt. No Washington court has decided whether a plaintiff "prevails" pursuant to RCW 42.17.340(3) under these circumstances.

■ The plain language of RCW 42.17.340(3) is susceptible to more than one interpretation. It is unclear whether "in the courts" modifies "prevails" or "action." If "in the courts" modifies "prevails," then the plaintiff cannot recover unless it prevails *in court*. However, if "in the courts" modifies "action," then the plaintiff may recover if it has prevailed and if *filing an action in court was necessary to obtain disclosure*. Under the latter interpretation, the plaintiff could prevail if the documents were disclosed after the plaintiff filed an action, even though the plaintiff did not prevail *in court* for the simple reason that no court judgment was necessary.

---

[2]On November 21, 1990, subsequent to oral arguments in this case, the Department provided COGS with copies of the LEIU financial records. This recent development does not affect our decision in this case.

Washington courts have held that the WPDA must be liberally construed to promote full access to public records. *Progressive Animal Welfare Soc'y v. UW*, 114 Wn.2d 677, 682, 790 P.2d 604 (1990). The statute's "mandate for liberal construction includes a liberal construction of the statute's provision for award of reasonable attorneys' fees." 114 Wn.2d at 683. In *Progressive Animal Welfare Soc'y*, the court held that a plaintiff's failure to negotiate with a public entity for the release of records was not a basis for reducing the amount of attorney fees a plaintiff is entitled to under RCW 42.17.340(3). 114 Wn.2d at 681. In so holding, the court reasoned in part that imposing on plaintiff a duty to negotiate would

> allow an agency to deny a request for information in its entirety and by the simple act of offering to discuss the matter with the requester put the recovery of attorneys' fees mandated by the statute (RCW 42.17.340(3)) at risk. *This undercuts the public policy of the act, which is to require public entities to promptly answer requests for public records.*

(Italics ours.) 114 Wn.2d at 685. The court thus indicated that imposing a duty on the plaintiff to negotiate jeopardizes the plaintiff's right to attorney fees, undercutting the policy of the act. By analogy, permitting an agency to avoid attorney fees by disclosing the documents after the plaintiff has been forced to file a lawsuit also would undercut the policy behind the act. This we refuse to do.

■ The attorney fees provision of the WPDA differs from that found in the Freedom of Information Act (FOIA).[3] Nonetheless, both provisions further the same basic objective. Washington courts have stated that interpretations of the FOIA are helpful in construing the WPDA. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 129, 580 P.2d 246 (1978). Federal courts have held that interpreting the FOIA to require plaintiffs to prevail *in court* would

---

[3]*See Progressive Animal Welfare Soc'y*, at 687–88, for discussion. The test for determining whether a plaintiff is eligible for attorney fees under the FOIA is whether the plaintiff has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E); *see Miller v. United States Dep't of State*, 779 F.2d 1378 (8th Cir. 1985).

take the teeth out of the act. *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1365 (D.C. Cir. 1977); *Kaye v. Burns,* 411 F. Supp. 897, 902 (S.D.N.Y. 1976).

> In enacting section 552(a)(4)(E) Congress sought to encourage the average person, who would ordinarily find the barriers of court costs and attorney fees insurmountable, to pursue legitimate FOIA actions. The effectiveness of this incentive would be greatly diminished if the complainant was forced to bear the costs whenever the government chose to release the requested information during the pendency of the action but prior to a judgment or a court order.

(Footnote omitted.) *Cuneo,* at 1365. For the same reasons, interpreting the WPDA to require plaintiffs to prevail in court would take the teeth out of the act.

██ In interpreting the FOIA, federal courts have held that a plaintiff is entitled to recover attorney fees if the plaintiff "substantially prevails." *Miller v. United States Dep't of State,* 779 F.2d 1378, 1389 (8th Cir. 1985). Under the federal act, a plaintiff substantially prevails if it demonstrates that "prosecution of the action could reasonably be regarded as necessary to obtain the information," and that "the existence of the lawsuit had a causative effect on the release of the information." *Miller,* at 1389. In the instant case, the Department refused to disclose the records before COGS filed a lawsuit, and finally disclosed the documents as a result of negotiations with COGS. Thus, under the federal test, COGS has "substantially prevailed."

We are aware that Washington courts have held that a prevailing party for the purposes of the public disclosure act "'is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case.'" *Progressive Animal Welfare Soc'y,* at 684 (quoting *Tacoma News, Inc. v. Tacoma–Pierce Cy. Health Dep't,* 55 Wn. App. 515, 525, 778 P.2d 1066 (1989), *review denied,* 113 Wn.2d 1037 (1990)). On the surface, these cases suggest that a plaintiff must prevail *in court* to recover attorney fees and costs. In both decisions, however, the issue was whether the court should uphold the trial court's judgment that the plaintiff had a right to the records in question. In neither case did

the court consider whether the plaintiff would have prevailed absent a judgment by the trial court. Thus, these cases are distinguishable.

Also distinguishable are interpretations of statutes in other contexts permitting an award of attorney fees to the prevailing party. *Ennis v. Ring,* 56 Wn.2d 465, 473, 353 P.2d 950 (1959); *American Fed. Sav. & Loan Ass'n v. McCaffrey,* 107 Wn.2d 181, 194–95, 728 P.2d 155 (1986). In these cases, the court held that "[t]he prevailing party is the one who has affirmative judgment rendered in his favor at the conclusion of the entire case." *Ennis,* at 473. Because interpretations of these statutes do not involve the policy objectives behind the WPDA, these cases are not dispositive.

We conclude that COGS "prevailed." COGS's "prosecution of the action could reasonably be regarded as necessary to obtain the information," and "the existence of the lawsuit had a causative effect on the release of the information." *Miller,* at 1389. Moreover, the trial court found that the disclosed documents were not exempt. Even absent such a finding, the Department's disclosure of documents cannot be analogized to a settlement in a civil suit. The scheme of the WPDA "establishes a positive duty to disclose public records unless they fall within the specific exemptions.'" *Progressive Animal Welfare Soc'y,* at 682–83 (quoting *Hearst,* at 130). If an agency discloses documents it believes to be exempt, that agency runs the risk of violating a governmental duty or an individual's right of privacy. RCW 42.17.310. Thus, when the Department disclosed the records in 1980 without having sought any declaratory relief, the Department waived its right to claim they were exempt.[4]

The second issue is whether COGS is barred from recovering attorney fees, costs, or penalties by either laches or

---

[4]With respect to the recently disclosed LEIU financial records, the Department contends that the records were exempt when COGS made its initial request and became disclosable only later.

equitable estoppel. In 1988, the Department moved to dismiss all of COGS's claims, including its claim for attorney fees, costs, and penalties, under the theories of laches and equitable estoppel. The trial court declined to hold that this claim was barred by laches or equitable estoppel; and instead, held that the issue remained for trial. We note that the Department did not assign error to the June 6, 1988, ruling in its brief as required by RAP 10.3(a)(3). Nonetheless, we agree with the trial court that neither laches nor equitable estoppel bars COGS's claim for attorney fees and costs. COGS attempted to submit its claim to an arbitrator in 1986. The Department successfully contested the arbitration by arguing that not all of the disclosure issues had been resolved. These facts do not indicate that COGS abandoned its claim. Nor do they indicate that the Department believed COGS had abandoned its claim. Thus, the facts do not support a finding of either laches or equitable estoppel.

■■ Moreover, to prevail under either the doctrine of laches or equitable estoppel, the Department was required to demonstrate injury or prejudice. *LaVergne v. Boysen,* 82 Wn.2d 718, 721, 513 P.2d 547 (1973) (laches); *Emrich v. Connell,* 105 Wn.2d 551, 559, 716 P.2d 863 (1986) (equitable estoppel). The inconvenience the Department suffered from having to assign a new attorney to the case each time COGS prosecuted its claims is not sufficient to demonstrate injury or prejudice.

■ The third issue is whether the trial court erred in denying disclosure of additional documents on grounds that the issue was moot. "A case is moot if the issues it presents are 'purely academic'." *State v. Turner,* 98 Wn.2d 731, 733, 658 P.2d 658 (1983). "It is not moot, however, if a court can still provide effective relief." *Turner,* at 733. In the instant case, the trial court dismissed COGS's claim that it was entitled to disclosure of additional documents, stating that the issue "was essentially moot since 1979." Although the trial court did not set forth the basis for its decision, it implied that the issue was rendered moot by the trial

court's 1979 ruling that the Department had sufficiently complied with COGS's discovery requests. Note, however, that in 1979, the trial court declined to rule on whether the records in question were exempt. Moreover, the trial court's 1979 ruling indicates that portions of the undisclosed documents may have been disclosable:

> viewing these documents *in their current unexpurgated* form would be detrimental to effective law enforcement and . . . a viewing is unnecessary since adequate disclosure for *discovery purposes* has been made.

(Italics ours.) Because the trial court never disposed of COGS's claim that it was entitled to copies of the records requested but not disclosed, namely LEIU financial records, the disclosure issue was not moot.

The trial court's July 22, 1988, ruling that "neither party prevailed" contradicts the policy behind the WPDA, and the June 6, 1988, ruling that disclosure of additional documents was a moot issue also constitutes error. We reverse both rulings and remand for a determination of the attorney fees, costs, and penalties to which COGS is entitled. Because of COG's contribution to the delay in this case, reasonable attorney fees shall be determined according to the rates existing at the time the fees were incurred.

FORREST and BAKER, JJ., concur.