117 P.3d 1117 (2005)
SPOKANE RESEARCH & DEFENSE FUND, a Washington nonprofit corporation, Plaintiff,
Tim Connor; Rhubarb Sky LLC, Petitioners,
v.
CITY OF SPOKANE, a Washington first class charter city, Respondent.
No. 75577-9.
Supreme Court of Washington, En Banc.
Argued June 7, 2005.
Decided August 11, 2005.
*1119 John David Blair-Loy, San Diego, CA, Nancy A. Pacharzina, Tousley Brain Stephens, PLLC, Seattle, for Petitioners.
Laurel Hobbs Siddoway, David Groesbeck, Randall & Danskin PS, Spokane, for Respondent.
Shelley Marie Hall, Stokes Lawrence, Seattle, for Amicus Curiae (Allied Daily Newspapers of Washington, Inc.)
*1120 SANDERS, J.
¶ 1 This case arises under the public disclosure act (PDA), chapter 42.17 RCW. Tim Connor and Rhubarb Sky, LLC, intervenors/petitioners, seek reversal of a published Court of Appeals opinion affirming the superior court's dismissal of their claims and denial of fees, costs, and sanctions for the alleged PDA violations. We reverse and also deny the city's motion to dismiss this appeal as moot or otherwise barred.

FACTS AND PROCEDURAL HISTORY
¶ 2 In January 2000, Tim Connor, an independent reporter,[1] filed a PDA request with the city of Spokane for, inter alia, "all memos, emails, notes, and correspondence among and between" various city officials and similar documents from these officials to external entities regarding the River Park Square (RPS) project in downtown Spokane. Clerk's Papers at 43, 60-61. The city made certain documents available right away and told Conner 30 days would be needed to collect additional documents. Over the next few months, Connor met with various city officials and reviewed documents that were periodically produced. On April 11, 2000, Connor reiterated his PDA request, emphasizing that only two memos had been produced so far.
¶ 3 During the spring of 2000 the city began to compile all RPS documents into a central repository in response to the likelihood of litigation over the project. Two interns, working under the direction of city attorney Milton Rowland, sorted the documents, putting perceived work product and privileged documents in separate binders. Rowland did not review the documents to ensure they were properly withheld from the public. Filler pages were placed in the public records indicating a confidential record was being withheld. Connor reviewed the public binders in June 2000 and found 167 filler pages, none of which indicated why the documents were being withheld.
¶ 4 In March 2001, Connor spoke with city council member Cheri Rodgers, who indicated some of the withheld documents did not warrant confidential treatment. On March 27, 2001, Connor requested a complete listing of all documents still withheld and the reasons for doing so. In April, Rowland sent Connor a list of the documents, claiming attorney/client privilege as the reason for confidentiality. The list contained 152 of the 167 documents in the confidential binders, along with 55 new documents for a total of 207 documents for which the privilege was claimed.
¶ 5 On April 24, 2001, holders of the bonds used to finance the RPS project filed suit against the city and others, and city officials reviewed claimed confidential documents on June 12, 2001 to prepare for the litigation. On June 13, 2001, Connor wrote Rowland asking for release of certain documents. On June 18, 2001, Rowland responded, noting that review of the confidential binders had begun and that new documents had been added. He said the city was determining if any of the documents should be released.
¶ 6 On June 22, 2001, Connor filed suit (Connor I). A show cause hearing was scheduled for July 12, 2001, but the hearing never took place and discovery ensued. The city had completed its revision of the confidential documents list. The list was revised in September 2001. A little over 100 documents remained withheld; the rest were disclosed.
¶ 7 Meanwhile, the city had sued the developer over the RPS project. The city's special counsel, O. Yale Lewis, Jr., had prepared a report on the RPS project for the city council, which released the report to the public in October 2000. In November 2001, the developer claimed the city had waived the attorney/client privilege for all documents used to prepare that report. The trial court agreed and defined the scope of the waiver on December 21, 2001. The city worked with Lewis over the next few months to determine which documents should be disclosed in response to this order, making the documents available to the public as identified.
¶ 8 Also during this time frame, the city brought third-party claims against its bond *1121 counsel, Roy Koegen, and the law firm, Perkins Coie, in the bondholder suit. The city thus waived its claimed attorney/client privilege with Koegen to the extent necessary for his defense. The extent of the waiver was settled by orders issued in October 2002.
¶ 9 On January 7, 2002, Spokane Research & Defense Fund (SRDF) filed this lawsuit (Connor II). SRDF obtained a show cause order with a hearing scheduled for January 22, 2002. Connor intervened because his own action sought the same documents. His complaint in intervention brought all of the claims from his own suit to this one. The complaint asked for disclosure of all documents withheld as listed in the September 2001 index.
¶ 10 The city delivered to the court the 111 withheld documents on January 18, 2002 for in camera review. On March 20, 2002, the city notified the court that only 24 of those documents were still withheld, the remainder having been disclosed pursuant to the Lewis waiver. In April 2002, the court reviewed 18 documents and determined they were properly withheld as privileged.[2]
¶ 11 On May 20, 2002, Connor moved for summary judgment. He argued the documents were never privileged, and hence there was no privilege to waive. He asked the judge to review all of the documents withheld on the September 2001 list (111) as well as certain other documents. Connor also requested attorney fees, costs, and sanctions. The city responded that Connor was not the cause of the documents being disclosed: that it resulted from other litigation. The city also claimed the PDA issues were moot, Connor's dealings with council member Cheri Rodgers were inequitable, there was no reason for the sanctions, and the remaining documents were properly privileged. The court denied the motion as well as a motion for reconsideration and clarification.[3]
¶ 12 The city moved to dismiss Connor's claims as moot and for summary judgment on November 15, 2002. The court granted the motion. The court found Connor's intervention was not the cause of, nor reasonably necessary for, the disclosure, which had occurred because of the court order regarding the Lewis waiver. The court also concluded the city acted reasonably in withholding the documents until the scope of the waiver was settled. Finally, the court determined the other documents withheld were properly within the scope of the attorney/client privilege and the work product doctrine.
¶ 13 Connor appealed these two orders.[4] The Court of Appeals affirmed because Connor did not obtain a show cause order and because the documents were disclosed as a result of other litigation. Spokane Research & Defense Fund v. City of Spokane, 121 Wash.App. 584, 586, 89 P.3d 319 (2004). The court concluded Connor was not a prevailing party under RCW 42.17.340(4) because he did not obtain a show cause order, and the order obtained by SRDF did not apply to Connor as an intervenor. Id. at 590-91, 89 P.3d 319. Further, the court opined that summary judgment is incompatible with the PDA's statutory scheme, rendering it an improper procedure to prosecute such claims. Id. at 591-92, 89 P.3d 319.
¶ 14 Connor petitioned this court for review, which we granted.

STANDARD OF REVIEW
¶ 15 "Judicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo." RCW 42.17.340(3); see also Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994) (PAWS II) (applying de novo review in a case that had been decided in the trial court on summary judgment).

*1122 ANALYSIS

I. The City's Motion to Dismiss and Request for Judicial Notice Is Denied
¶ 16 The city filed a motion to dismiss this action because Connor I has gone to judgment, and the window for an appeal passed without either side appealing. The city asks us to take judicial notice of that action.[5] Appended to the request for judicial notice are the judgment in Connor I, the findings of fact, and the conclusions of law, and the trial court's memorandum opinion of April 19, 2002, which determined the 18 documents were properly withheld as privileged.
¶ 17 Judicial notice is allowed at any stage of the proceeding. ER 201(f). Judicial notice may be taken on appeal if the following standard is met:
We may take judicial notice of the record in the case presently before us or "in proceedings engrafted, ancillary, or supplementary to it." However, we cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties.
In re Adoption of B.T., 150 Wash.2d 409, 415, 78 P.3d 634 (2003) (citations omitted). Further, RAP 9.11 applies in addition to the normal judicial notice standard. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 549 n. 6, 14 P.3d 133 (2000) ("Even though ER 201 states that certain facts may be judicially noticed at any stage of a proceeding, RAP 9.11 restricts appellate consideration of additional evidence on review.").[6]
¶ 18 The city claims this action is "engrafted, ancillary or supplemental" to Connor I, making it appropriate to take judicial notice of that case. The city argues the parties are the same, and the issues are the same since Connor's complaint in intervention incorporated all of his claims from Connor I. This is true. The same documents are at issue in both cases and the parties are the same. However, Connor claims that after he intervened in this case, he dropped the claims of attorney-client privilege and work product from Connor I and prosecuted them here. The city admits these issues were not litigated in Connor I after this action commenced. Further, the city does not even address RAP 9.11. The commissioner denied the city's first request for judicial notice because Connor I was a separate proceeding, and his reasoning applies to this request as well. The request is denied.
¶ 19 The city claims this case is now moot and Connor is barred by res judicata. RAP 18.9(c) allows an appellate court to dismiss a case if it is moot. A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief. Westerman v. Cary, 125 Wash.2d 277, 286, 892 P.2d 1067 (1994). The city argues final judgment in Connor I renders any questions in this case academic since the trial court granted the relief Connor sought, including attorney fees, costs, and sanctions for violations of the PDA. However, the court in Connor I did not consider the claims of attorney-client privilege and work product, and thus those claims are not moot even though everything else about the two cases is identical, being between the same parties for the same documents sought in the same requests. If Connor prevails in this case (both here and on remand), he is entitled to attorney fees, costs, and sanctions. Thus, the case is not moot and we will not dismiss.
*1123 ¶ 20 Likewise, res judicata does not bar review. Res judicata, or claim preclusion, is intended to prevent piecemeal litigation and ensure the finality of judgments. Landry v. Luscher, 95 Wash.App. 779, 783, 976 P.2d 1274 (1999). Thus, a subsequent action should be dismissed if it is identical with the first action in the following respects: (1) persons and parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made. Id. (citing Hayes v. City of Seattle, 131 Wash.2d 706, 711-12, 934 P.2d 1179, 943 P.2d 265 (1997)). The city cites these four elements and minimally applies them, but it does not analyze them in any depth against the tests discussed in the case law. See id. at 783-85, 976 P.2d 1274. Further, the city does not acknowledge the defense of res judicata may be waived, especially where, as here, the two cases were pending simultaneously. See id. at 786, 976 P.2d 1274. The city did not oppose Connor's intervention in this case nor did it raise the issue previously. Hence it has waived any objection to litigating a subset of the original Connor I claims here. The motion to dismiss is denied.

II. Prejudgment Disclosure of Records Does Not Moot Judicial Review
¶ 21 The PDA "is a strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978). Indeed, "full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17.010(11). We interpret the PDA liberally to promote full disclosure of government activity that the people might know how their representatives have executed the public trust placed in them and so hold them accountable. See Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wash.2d 677, 682, 790 P.2d 604 (1990) (PAWS I). It is therefore imperative that government agencies timely comply with the mandates of the PDA.
¶ 22 To serve the broad goal of transparent government, agencies are required to adopt rules and regulations that "provide for the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.17.290. Agencies bear the burden to prove a particular statutory exemption applies, RCW 42.17.340(1), and they may not define the parameters of the exemptions, see Hoppe, 90 Wash.2d at 131, 580 P.2d 246 ("[L]eaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization."). Thus, judicial oversight is essential to ensure government agencies comply with the PDA.
¶ 23 Further, the PDA provides for attorney fees, costs, and sanctions to a party who prevails against an agency when enforcing the right to inspect or copy public records. RCW 42.17.340(4). The sanctions are calculated on a daily basis. Id. "This provision has been treated by this court as a penalty to enforce the strong public policies underlying the public disclosure act." Amren v. City of Kalama, 131 Wash.2d 25, 35-36, 929 P.2d 389 (1997) (citations omitted). Strict enforcement of this provision discourages improper denial of access to public records. Id. at 36, 929 P.2d 389. A showing of bad faith is not required nor does good faith reliance on an exemption exonerate an agency that mistakenly relies upon that exemption. Id.
¶ 24 Connor argues the "merits of a PDA claim are determined based on the circumstances that existed at the time of the request." Pet'r's Supp. Br. at 4. Thus, Connor reasons, subsequent disclosure of the documents does not affect the judicial proceeding. Connor cites the purpose of the PDA to protect the "right to inspect or copy any public record." RCW 42.17.340(4). He claims this language is broader than the PDA's federal counterpart, which allows enforcement only to enjoin withholding records and to order production. See 5 U.S.C. § 552(a)(4)(B).[7] Connor argues the cause of action should be broadly interpreted to protect *1124 this right to inspect, rather than merely to order the government to produce documents.
¶ 25 Second, Connor argues the PDA's mandatory fees, costs, and sanctions provide for relief even after the records are disclosed. In such a situation, the court's role is to determine an agency violation and assess the fees, costs, and sanctions. Such an interpretation, Connor asserts, is consistent with the PDA's goals and the mandate to interpret it liberally, and it is consistent with precedent.
¶ 26 In Oliver v. Harborview Medical Center, 94 Wash.2d 559, 618 P.2d 76 (1980), a patient sued to obtain her medical records, which the hospital was withholding from her. The hospital changed its policy and disclosed the records to her, and then claimed the suit was moot. However, we opined that further guidance was necessary because the hospital had not recognized her right to the records and so future violations were possible. 94 Wash.2d at 564, 618 P.2d 76; see also Coalition on Gov't Spying (COGS) v. King County Dep't of Pub. Safety, 59 Wash.App. 856, 801 P.2d 1009 (1991) (voluntary disclosure of records did not shield agency from paying fees, costs, and penalties); Tacoma Pub. Library v. Woessner, 90 Wash.App. 205, 951 P.2d 357 (1998) (obtaining the record from another source did not moot appeal).
¶ 27 Here, Connor has always asserted the previously withheld records were never privileged or work product from the outset and thus should have been immediately disclosed. No court has ruled whether all of the documents were properly withheld from the beginning. The city disclosed them only when ordered to do so in other litigation where the court deemed the asserted privilege waived.[8] The city has not admitted the documents were never privileged or work product. If Connor prevails on his argument, he will be entitled to fees, costs, and sanctions for the improper withholding. Thus, intervening disclosure of the documents did not moot judicial review. This is especially true since disclosure must be timely, RCW 42.17.270, .290, and penalties are calculated on a daily basis, RCW 42.17.340(4).[9] If Connor is correct, his right to inspect and copy the documents was improperly denied from the time of his request to the disclosure. Penalties must be assessed accordingly.

III. Causing the Disclosure Is Not Necessary to Obtain Prevailing Party Status
¶ 28 The trial court denied Connor's motion for summary judgment asking for fees, costs, and penalties because Connor's action was not the cause of the disclosure. The Court of Appeals agreed. This is the mootness argument in another garb. It allows government agencies to resist disclosure of records until a suit is filed and then to disclose them voluntarily to avoid paying fees and penalties. This rule flouts the purpose of the PDA and is inconsistent with Oliver. There the hospital released the records voluntarily and then claimed it was not liable for anything further. 94 Wash.2d at 564, 618 P.2d 76. Here, the city was forced to release the records by court order in another case and has never admitted the records were not privileged or work product, which is what Connor has claimed all along. Connor has not yet had a court review all of the documents and determine if they were properly withheld from the outset. If he prevails on that point, he is entitled to fees and penalties even if his action did not cause the disclosure.
¶ 29 Additionally, nowhere in the PDA is prevailing party status conditioned on causing disclosure, a standard Connor argues is borrowed from the different federal *1125 disclosure scheme.[10] We will not read into the statute what is not there. See PAWS I, 114 Wash.2d at 688, 790 P.2d 604. Rather, the "prevailing" relates to the legal question of whether the records should have been disclosed on request.[11] Subsequent events do not affect the wrongfulness of the agency's initial action to withhold the records if the records were wrongfully withheld at that time. Penalties may be properly assessed for the time between the request and the disclosure, even if the disclosure occurs for reasons unrelated to the lawsuit. "[P]ermitting an agency to avoid attorney fees by disclosing the documents after the plaintiff has been forced to file a lawsuit . . . would undercut the policy behind the act." COGS, 59 Wash.App. at 862, 801 P.2d 1009.

IV. A Show Cause Order Is Optional, Not Mandatory, and Intervention Is Allowed
¶ 30 The Court of Appeals held that Connor's failure to obtain a show cause order eliminated his entitlement to fees and penalties. However, RCW 42.17.340(1) indicates the show cause proceeding is discretionary, not mandatory:
Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court . . . may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records.
(Emphasis added.) Fees, costs, and penalties are awarded for "any action in the courts." RCW 42.17.340(4). The language allows for any kind of civil action.
¶ 31 The civil rules "govern the procedure in the superior court in all suits of a civil nature . . . with the exceptions stated in rule 81." CR 1. There is only one form of a civil action. CR 2. CR 81 states the civil rules govern to all civil proceedings "[e]xcept where inconsistent with rules or statutes applicable to special proceedings." CR 81. Special proceedings are detailed in the statutes and include garnishment, Zesbaugh, Inc. v. Gen. Steel Fabricating, Inc., 95 Wash.2d 600, 603, 627 P.2d 1321 (1981), unlawful detainer, Canterwood Place L.P. v. Thande, 106 Wash.App. 844, 847, 25 P.3d 495 (2001), and sexually violent predator proceedings, In re Detention of Aguilar, 77 Wash.App. 596, 600, 892 P.2d 1091 (1995).
¶ 32 All of these proceedings are statutorily defined, whereas actions under the PDA are not. The statute simply does not define a special proceeding exclusive of all others. When a statute is silent on a particular issue, the civil rules govern the procedure. King County Water Dist. v. City of Renton, 88 Wash.App. 214, 227, 944 P.2d 1067 (1997). Thus, normal civil procedures are an appropriate method to prosecute a claim under the liberally construed PDA. In the past, we have heard PDA cases that did not involve show cause orders. See, e.g., CLEAN v. City of Spokane, 133 Wash.2d 455, 947 P.2d 1169 (1997) (declaratory and injunctive relief sought); Amren v. City of Kalama, 131 Wash.2d 25, 29-30, 929 P.2d 389 (1997) (writ of mandamus to compel disclosure *1126 under the PDA, fees and penalties awarded to plaintiff).
¶ 33 The Court of Appeals also viewed intervention as improper in this situation, finding no statutory or case law to support same. 121 Wash.App. at 590-91, 89 P.3d 319. It rejected the scenario of another person intervening and obtaining fees and penalties without having sought another show cause order, thus benefiting from the first requester's actions. However, court rules do allow intervention in civil actions, see CR 24, and, as noted above, these rules apply unless inconsistent with a statutory procedure. The PDA says nothing about intervention, implying that such a procedure is proper to the extent allowed by the civil rules. It has been allowed before. See King County v. Sheehan, 114 Wash.App. 325, 333, 349-50, 57 P.3d 307 (2002) (requester and intervenor awarded attorney fees and penalties for suit). There is no reason not to allow intervention when the intervenor asserts different arguments about the same factual scenario seeking the same relief. If the intervenor prevails on his own claims, he is a prevailing party and is entitled to relief. We will not erect technical barriers to deny review on the merits when to do so is contrary to the purpose of the PDA.

V. Summary Judgment Is an Appropriate Procedure in PDA Cases
¶ 34 The Court of Appeals held that summary judgment is "incompatible with the statutory scheme" of the PDA. 121 Wash.App. at 592, 89 P.3d 319. The court reasoned an evidentiary hearing at the outset of the case is essential and burdens of proof are established by statute. Further, a hearing is provided for in the statutory show cause proceeding. RCW 42.17.340(1). However, a trial court may conduct a hearing based solely on affidavits or in camera review of the documents. RCW 42.17.340(3). Further, we have heard many PDA cases that were decided in the trial court on summary judgment. See, e.g., Hangartner v. City of Seattle, 151 Wash.2d 439, 90 P.3d 26 (2004); Newman v. King County, 133 Wash.2d 565, 947 P.2d 712 (1997); PAWS II, 125 Wash.2d 243, 884 P.2d 592. This procedure is also a proper method to prosecute PDA claims.

CONCLUSION
¶ 35 The trial court and the Court of Appeals erred by denying Connor review on the merits of his claim, instead dismissing his claims as moot and because he did not cause the disclosure of the records. His claims are not moot since fees, costs, and penalties are appropriate if he prevails on the merits, and causation of the disclosure is not required to prevail. Further, a show cause procedure is discretionary, not mandatory, and intervention is appropriate in this situation, as is summary judgment. Thus, we reverse the Court of Appeals and remand to the trial court for further proceedings.
ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ., concur.
NOTES
[1] Tim Connor works for Rhubarb Sky, LLC, as the senior editor of Camas Magazine.
[2] The court reviewed only 18 of the 24 documents because of an error in the city's letter of March 20, 2002, which listed only 18 documents still withheld. The remaining documents appear to have either been reviewed or later disclosed.
[3] The court granted attorney fees and costs to SRDF because it had requested the documents before the trial court ruled on the Lewis waiver but was denied them. It then followed the statutory procedure to obtain a show cause order.
[4] The trial court directed entry of judgment because Connor I was still pending.
[5] This is the city's second and third requests for judicial notice of Connor I. The motion to dismiss and the requests for judicial notice were passed to the merits.
[6] RAP 9.11 provides in relevant part:

The appellate court may direct that additional evidence on the merits of the case be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.
[7] The Freedom of Information Act (FOIA) also allows for attorney fees and costs in the discretion of the court. 5 U.S.C. § 552(a)(4)(E). Our PDA mandates attorney fees, costs, and sanctions. RCW 42.17.340(4).
[8] The city attempts to distinguish Oliver on the grounds that the city recognized Connor's right to the documents. But it did so only after a court determined it waived the privilege, not because the documents were never privileged. The city also points out that Oliver obtained a show cause order, but this has no bearing on the mootness question.
[9] Penalties are mandatory; the amount is discretionary within the statutory parameters. Yousoufian v. Office of Ron Sims, 152 Wash.2d 421, 433, 98 P.3d 463 (2004).
[10] FOIA allows fees and costs to a party who "substantially prevail[s]," within the discretion of the court. 5 U.S.C. § 552(a)(4)(E). To substantially prevail, the plaintiff must prove his action was reasonably necessary to obtain the information and the action had a causative effect on the release. See COGS, 59 Wash.App. at 863, 801 P.2d 1009 (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1389 (8th Cir.1985)). The COGS court adopted this standard for the PDA; we never have, and decline to do so. Our statute says nothing about "substantially prevailing" and differs from the federal scheme at several important points, notably mandatory fees and penalties. See PAWS I, 114 Wash.2d at 687-88, 790 P.2d 604. Further, we have said that "`strict enforcement of fees and fines will discourage improper denial of access to public records.'" PAWS II, 125 Wash.2d at 272, 884 P.2d 592 (quoting 114 Wash.2d at 686, 790 P.2d 604). The harm occurs when the record is improperly withheld. The requester should recover his costs, and the agency should be penalized, if the requester has to resort to litigation (the reason for the later disclosure is irrelevant). This rule promotes the PDA's broad mandate of openness.
[11] In dicta we once used this standard for prevailing party: "`one who has an affirmative judgment rendered in his favor at the conclusion of the entire case.'" PAWS I, 114 Wash.2d at 684, 790 P.2d 604 (quoting Tacoma News, Inc. v. Tacoma-Pierce County Health Dep't, 55 Wash.App. 515, 525, 778 P.2d 1066 (1989)). Even under this standard (the adoption of which we do not decide), causation is not mentioned.