# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 55779-7-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CITY OF LAKEWOOD, | |
| Respondent. | |

WORSWICK, J. — Arthur West appeals the superior court's order granting the City of

Lakewood (City) summary judgment on his Public Records Act (PRA) complaint under chapter

42.56 RCW. West's PRA request sought records related to the shooting and killing of Michael

Reinoehl by law enforcement officers in an interagency task force. West spelled Reinoehl's

name correctly in the subject line of his request, but spelled it "Reinoel" in the body. The City

conducted a search of its records using only the misspelled name, found no responsive

documents, and notified West as such. West filed a lawsuit, and then the City conducted a

search with the correct spelling, which revealed numerous records the City then provided to

West. The trial court granted the City's motion for summary judgment dismissing West's case.

West argues that (1) the City did not conduct an adequate initial search under the PRA,

(2) the City improperly asserted an investigation exemption without providing an exemption log,

and (3) the City did not cure its error by providing the responsive records after West filed a

No. 55779-7-II

lawsuit, and (4) the superior court erred when it struck West's cross motion for summary judgment.[1]

We hold that (1) as a matter of law, the City did not conduct an adequate initial search under the PRA, (2) the City's assertion of investigative exemption was error that flowed from the its inadequate initial search, and (3) that the City may not cure its inadequate search by providing responsive records after a complaint is filed. Accordingly, we reverse the summary judgment order and remand this case to the superior court for further proceedings consistent with this opinion.

FACTS

I. WEST'S PRA REQUEST AND CITY'S INITIAL RESPONSE

On October 23, 2020, West submitted a public records request to the City. The subject line of West's request read, "RE: Public Records Request for Reinoehl Arrest and Investigation Records." Clerk's Papers (CP) at 81. The body of the request, which was located on the same page as the subject line, read:

> Please consider this as a request for inspection or copies of records under RCW 42.56, the common law and any administrative rules that may apply, in regard to the following records:
>
> All records and communications concerning the investigation, apprehension and killing of Michael *Reinoel*, to include any intra or interdepartmental communications, any police reports, CAPCOM records, any radio, radiotelephone,

---

[1] He also appeals the superior court's orders striking his April cross-motions for summary judgment, his motion to compel discovery, the court's dismissal of his May cross-motion for summary judgment, and its denial of his motion for reconsideration. However, West does not argue any issue related to these orders in his brief. Accordingly, we do not address them. *See Long v. Snoqualmie Gaming Comm'n*, 7 Wn. App. 2d 672, 690, 435 P.3d 339 (2019) ("We need not address an issue that a party does not argue in its brief.").

2

> text or other electronic communications, any emails, writings, memos, directives, or other communications of any form, to include any review, investigation, or analysis of any form of the above mentioned events and related activity.

CP at 59-60 (emphasis added).

The City's Public Records Specialist, Alicia O'Flaherty, received the request and routed the request to other City staff members, including Lakewood Police Lieutenant Chris Lawler, the police point of contact for records requests, and Ken White and Tyler Wells, City information technology (IT) employees who conduct email and text searches.

Lieutenant Lawler was aware of Reinoehl's shooting and advised O'Flaherty that Thurston County was conducting the investigation into Reinoehl's death. On October 27, Lawler told O'Flaherty that the Lakewood Police had no responsive records because the incident was being investigated by Thurston County. Lawler suggested the City conduct a search of its IT systems to capture responsive records.

On November 20, White searched the City's email server for the term "Michael Reinoel," as misspelled in the body of West's request. CP at 46. White searched the internet for the date of the shooting and found reports that a person "with a name similar to the search term 'Michael Reinoel'" had been shot in August 2020. CP at 46. However, White searched the City's email server using only the misspelling supplied by West in the body of his request. White found no responsive files.

On December 18, Wells searched the City's text message database for the term "Michael Reinoel" as misspelled in the body of West's request. CP at 50. Wells found no responsive records. Wells and White reported their findings to O'Flaherty.

3

O'Flaherty sent West a response on December 18.  Her response stated:

**Request Closed**

Thank you for your public records request.  However, after a diligent search we did not locate responsive records. (No responsive emails or text messages) As stated on my message on 11/24/2020:

The City of Lakewood is not able to release information to you at this time.  The records requested are associated with a case that is under active investigation and non-disclosure is essential to effective law enforcement.  (RCW 42.56.240(1)).  This incident is being investigated by the Thurston County Sherriff's Department and the records should be requested from them.  I am including referral information.

. . . .

We consider this request to be concluded. Thank you.
*December 18, 2020, 2:08pm by Alicia O'Flaherty*

CP at 60-61.

## II.  WEST'S COMPLAINT AND CITY'S REVISED RESPONSE

On December 21, West filed a complaint in superior court requesting records disclosure, declaratory relief, and penalties under the PRA.  West alleged that the City failed to reasonably disclose responsive records, failed to conduct an adequate search, and asserted an improper exemption to his request.  He alleged that the City violated RCW 42.56.550 (1) and (2) by failing to disclose the requested records, entitling him to the records, as well as costs, fees, and per diem penalties, and he also sought declaratory judgment that the City was required to disclose the records under chapter 7.24 RCW.

After West filed his complaint, but before the City was served, the City discovered the spelling error in West's original request.  On December 28, O'Flaherty became aware that West had filed suit, opened a new disclosure request to conduct a search using the correct spelling, and

found many responsive records.[2]  The City contacted West on December 30 to inform him that it had found responsive records and that they would be available online.

The City also added search terms that included the locations at issue in the Reinoehl case. The City discovered more than 1,500 responsive records covering more than 7,700 pages, and 11 text messages.  The City provided West with these documents in installments between December 30, 2020, and February 8, 2021.

The record on appeal also shows that the City had received and responded to two other PRA requests for records related to Reinoehl in September 2020.  The two other requesters sought body camera footage, photographs, audio recordings, incident reports, and other documents from Reinoehl's shooting.

### III.  PROCEDURAL HISTORY

The City filed an answer to West's complaint on January 19, 2021.  The City stated that it had complied with the PRA and that it had reasonably relied on West's spelling, then later corrected its mistake.

On February 4, the City moved for summary judgment.   The City stated that its "first search did not meet its own standards, particularly when compared to a second search which produced" thousands of pages of responsive documents. CP at 22.  The City alleged that its failure to provide the records initially was due to "mutual mistakes." CP at 22.  The city framed West's complaint as a claim of a violation of the PRA under RCW 42.56.550(1), which

---

[2] The record on appeal is silent as to when the City was served with West's complaint.

provides for relief when an agency wrongfully denies an opportunity to inspect or copy a public record.

In its motion, the City argued that it had performed an "adequate search" as required by the PRA. CP at 28. The City argued that it acted in good faith and that it complied with the PRA because it made available all that it could find—but that it found nothing because of West's misspelling.

In April, West filed a cross motion for partial summary judgment, a "corrected" cross motion for partial summary judgment, and a "Motion to Compel Answers to Discovery and for Sanctions." CP at 67, 218. Attached to the motion for summary judgment he included "ER 904 Exhibits" that included City and Thurston County email communications and press releases related to Reinoehl's shooting. CP at 73, 84. The City moved to strike these pleadings for improper service. At a hearing on the motion to strike, the City stated that West did not properly serve the City, and that he served the City with 17 pages, but filed 52 pages with the court. West conceded that he had committed "a technical violation" of the service rules. 1 Verbatim Report of Proceedings (VRP) at 8. The court entered orders denying West's motion to compel and granting the City's motion to strike West's motions and ER 904 documents for failure to properly serve and/or note these pleadings.

On May 10, eleven days before the superior court's scheduled hearing on the City's motion for summary judgment, West filed a response to the City's motion for summary judgment that included a cross motion for summary judgment. His cross motion sought partial summary judgment that the City had violated the PRA.

6

The City objected to the cross motion for summary judgment, arguing that it was not filed more than 28 days before the scheduled hearing as required under CR 56, and asked the superior court to consider West's filing only as a response to the City's motion for summary judgment, and not as a cross-motion for summary judgment. The City again argued that its initial records search was adequate under the PRA. The City also argued that its admission of "mutual mistakes" was not an admission of failure to adequately search under the PRA, but rather a failure to conduct a "perfect" search under the City's own, heightened standards. CP at 397-98. The City attached a declaration from O'Flaherty that included the two other requests for records related to Reinoehl in September 2020. O'Flaherty also included the exemption log the City had provided West after discovering the spelling error.

The superior court held a hearing on the City's motion for summary judgment on May 21.

The superior court granted the City's motion for summary judgment. The court ruled that the City conducted an adequate search under the PRA, that the City had not claimed any privilege, and that the City cured any errors by providing responsive records to West within days of discovering the spelling error. Although the caption of the order states it is also "Dismissing Cross Motion," there is no language in the body of the order that dismisses or otherwise mentions West's cross motion for partial summary judgment. CP at 416-419. However, the court orally ruled that West's May 10 cross-motion for summary judgment was untimely because it was not served 28 days before the hearing.

West appeals the superior court's order granting the City's motion for summary judgment dismissing his lawsuit.

## ANALYSIS

West argues that the superior court erred when it granted the City summary judgment and ruled that the City's initial search was adequate under the PRA. He argues that the City's search was not adequate beyond material doubt, and that the City admitted to not conducting an adequate search when it stated that its "first search did not meet its own standards." Br. of Appellant at 14. West then argues that the court erred when it ruled that the City did not claim any investigative exemption in its response to West's initial request. West further argues the court erred when it ruled that the City cured any error by providing the responsive records after West filed his complaint. We hold as a matter of law that the City's search was not adequate and that the City did not cure its error by disclosing documents after West filed his lawsuit. Thus the superior court erred by granting summary judgment dismissing West's case.

### I. LEGAL PRINCIPLES

A.     *Standard of Review*

Under the PRA, agencies are required to disclose public records unless they fall within a specific, enumerated exemption. RCW 42.56.070(1); *West v. City of Tacoma*, 12 Wn. App. 2d 45, 70, 456 P.3d 894 (2020). "The PRA is a strongly worded mandate for broad disclosure of public records." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 714, 261 P.3d 119 (2011).

We review trial court decisions on summary judgment motions de novo, and we conduct the same inquiry as the superior court. *Neigh. All.*, 172 Wn.2d 702 at 715. Likewise, we review an agency's action under the PRA de novo. *Neigh. All.*, 172 Wn.2d 702 at 715. We conduct our review by taking into account the PRA's policy that free and open examination of public records is in the public interest. *Neigh. All.*, 172 Wn.2d 702 at 715; RCW 42.56.550(3).

B.      *Adequate Search*

On a motion for summary judgment on a PRA claim, an agency bears the burden of showing its search was adequate beyond material doubt. *Neigh. All.*, 172 Wn.2d at 720-21. "When an agency denies a public records request on the grounds that no responsive records exist, its response should show at least some evidence that it sincerely attempted to be helpful." *Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 522, 326 P.3d 688 (2014) (citing *Neigh. All.*, 172 Wn.2d at 722). To prove that its search was adequate, the agency may rely on affidavits from its employees submitted in good faith that are reasonably detailed and nonconclusory. *Neigh. All.*, 172 Wn.2d at 721. The affidavits "should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched." *Neigh. All.*, 172 Wn.2d at 721.

Our Supreme Court adopted the standard that the federal courts apply in Freedom of Information Act (FOIA) cases. *Neigh. All.*, 172 Wn.2d at 719-20. Under this approach, we focus on whether the search was reasonably calculated to uncover all relevant documents. *Neigh. All.*, 172 Wn.2d at 719-20. What is reasonable depends on the facts of each case. *Neigh. All.*, 172 Wn.2d at 720. Accordingly, whether a search is adequate is a separate question from

whether responsive documents exist. *Neigh. All.*, 172 Wn.2d at 719-20. Thus, our courts treat an inadequate search similarly to a denial because the result is the same. RCW 42.56.550(4); *Neigh. All.*, 172 Wn.2d at 721.

## II. ADEQUACY OF CITY'S INITIAL SEARCH

West argues that the superior court erred when it granted summary judgment on the basis that the City conducted an adequate search beyond material doubt. We agree.

In *Neighborhood Alliance*, a Spokane County employee knew that a PRA search would be "unfruitful" because she was searching only a new computer system, and not an older system that had recently been replaced. 172 Wn.2d at 722. However, rather than following up, the County responded to the requester that there were no documents responsive to its request. *Neigh. All.*, 172 Wn.2d at 722. The County did not explain to the requester the places it searched or that were unavailable to search. *Neigh. All.*, 172 Wn.2d at 722.

Our Supreme Court held that the search was inadequate and in violation of the PRA. *Neigh. All.*, 172 Wn.2d at 728. In doing so, it cited federal FOIA caselaw, and noted that an "agency must follow through on obvious leads." *Neigh. All.*, 172 Wn.2d at 722 (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325, 336 U.S. App. D.C. 386 (1999) (explaining that agencies responding to FOIA requests are required to "make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents")).

In FOIA cases, federal courts have followed this reasoning. In *International Counsel Bureau v. U.S. Department of Defense*, 864 F. Supp. 2d 101, 108-09 (D.D.C. 2012), the court ruled that a search was inadequate where the agency knew that the subject of a request went by

10

multiple names with multiples spellings, but failed to search for alternate spellings other than the one provided in the FOIA request. In *Kleinert v. Bureau of Land Management*, 132 F. Supp. 3d 79, 87-88 (D.D.C 2015), requester Kleinert misspelled his own name in his initial FOIA request but corrected it in an amended request, although he still misspelled it once. The court ruled that a search using only the wrong spelling was inadequate. *Kleinert*, 132 F. Supp. 3d at 87-88.

Here, the City failed to follow through on multiple obvious leads in its initial response to West's request. First, West spelled Reinoehl's name correctly in the subject line of his request. Thus, on the face of the request, there was at least one other spelling that obviously could have led to responsive documents. Second, Lieutenant Lawler was aware of Reinoehl's shooting and he knew which non-City agency was investigating the shooting. Despite Lawler's knowledge of the shooting, he did not find any responsive records, and the record is silent as to any follow-up on his part based on this knowledge. Third, IT analyst White searched the internet for the date of the shooting and found reports that someone "with a name similar to the search term 'Michael Reinoel'" had been shot in August 2020. CP at 46. Despite this, White conducted the records search using only the misspelling supplied by West in the text of his request. No one at the City followed up on the leads from White's internet search, conducted a search based on those results, or searched for any alternative spellings paired with the date of the incident. Fourth, the City had responded to two earlier PRA requests regarding Reinoehl's death. These were all obvious leads that the City failed to follow up on.

The City argues that it was not required to be a mind reader to discover the subject of West's request. It argues that Lawler's knowledge, what White discovered online, and the City's

11

earlier requests do not prove that the city "knew" what West meant when he submitted his request. Br. of Resp't at 26-30. Although the City is not required to be a mind reader to discern what a requester means when asking for certain records in a request, it is required to follow obvious leads in that request. *Hobbs v. State*, 183 Wn. App. 925, 944, 335 P.3d 1004 (2014); *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998) (distinguishing between a request for information *about* public records and a request for the records themselves); *Neigh. All.*, 172 Wn.2d at 722. And the City bears the burden of showing its search based on that request was adequate beyond material doubt. *Neigh. All.*, 172 Wn.2d at 720-21. It cannot do so here.

The City further argues that its search was adequate because the City was later able to quickly find all the responsive documents once it searched using the correct spelling. But as explained below, a city may not cure an error under the PRA by resisting disclosure of records and subsequently disclosing them voluntarily when a suit is filed. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103, 117 P.3d 1117 (2005) (holding such action "flouts the purpose" of the PRA). The City also argues that it has invested heavily in electronic systems to respond to PRA requests, and that this investment demonstrates adequacy. But the existence of a modern system is irrelevant if it is not used to properly follow up on obvious leads. Taking into account the correct spelling of Reinoehl's name at the top of West's request, the results of White's internet search on the topic, Lieutenant Lawler's knowledge of the event, and the City's responses to related requests, there were multiple obvious leads that the City did not follow up

on.  We hold as a matter of law that the City failed to conduct an adequate search and the superior court erred when it granted the City summary judgment on this basis.

### III.  CITY'S ASSERTION OF PRIVILEGE

West argues that the superior court erred when it granted summary judgment on the basis that the City did not claim any privileges, or, in other words, assert an exemption.  West argues the City claimed an exemption and failed to provide an exemption log for the documents it was exempting under its claimed privilege.  We agree.

Under RCW 42.56.240(1), an agency may exempt certain records from public inspection under the PRA.  It provides:

>      The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under [the PRA]:
>
>      (1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.56.210(3) provides: "Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld."

"The plain language of RCW 42.56.210(3) and our cases interpreting it are clear that an agency must identify 'with particularity' the specific record or information being withheld and the specific exemption authorizing the withholding." *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014) (quoting *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 537-38, 199 P.3d 393 (2009)) (internal quotation marks omitted).  This is

frequently accomplished through a "privilege log" that identifies and explains each exemption. *See Block v. City of Gold Bar*, 189 Wn. App. 262, 282, 355 P.3d 266 (2015).

Here, the City's response inconsistently said that there were no responsive records, and that the requested records were exempt under RCW 42.56.240(1). CP at 13, 60. The City's response to West's request states, in pertinent part,

> Thank you for your public records request. However, after a diligent search we did not locate responsive records. (No responsive emails or text messages) As stated on my message on 11/24/2020:
>
> The City of Lakewood is not able to release information to you at this time. The records requested are associated with a case that is under active investigation and non-disclosure is essential to effective law enforcement. (RCW 42.56.240(1)). This incident is being investigated by the Thurston County Sherriff's Department and the records should be requested from them. I am including referral information.

CP at 60. The City did not provide an exemption log with this response or any other information regarding which documents it was withholding under its asserted exemption or why.

From the City's response, it is difficult to determine whether the City found no responsive records, or whether it found no responsive records it was able to release given the investigative privilege it claimed under RCW 42.56.240(1). Regardless, the superior court ruled that the City did not claim any privileges, or in other words, that it did not assert an exemption. This was plainly error.

The City argues that it need not provide an exemption log when it does not assert any privileges. But this argument is not supported by the record: the City claimed it could not disclose records because of an active law enforcement investigation. The City then argues that it could not claim any exemption or privilege when it did not find any responsive records. It is

unclear *why* the City would do so, but it did so here. If there were no responsive records, then the City had no reason to claim the privilege. But in so claiming, the City raised the inference that it was withholding records because of an ongoing investigation. Moreover, the record on appeal shows the City provided a log of exemptions and redactions when it eventually provided West with the responsive records. Accordingly, the superior court erred when it granted summary judgment on the basis that the City did not claim any privileges and that it therefore need not produce an exemption.

## IV. CURING ERROR

West argues that the superior court erred when it granted summary judgment on the basis that the City cured any error by providing responsive documents in the days after West filed his complaint. We agree.

Allowing a government agency to resist disclosure of records until a suit is filed and then disclose them voluntarily to cure any error "flouts the purpose" of the PRA. *Spokane Research & Def. Fund*, 155 Wn.2d at 103 (analyzing the PRA's predecessor, the Public Disclosure Act, former chapter 42.17 RCW). To hold otherwise would mean agencies would have no incentive to respond and would force requestors to resort to litigation, while allowing the agency to escape penalties under the PRA. *Koenig*, 182 Wn.2d at 98.

Here, the City did not conduct an adequate search to West's initial response. West filed suit on December 21, 2020. After West filed his complaint, the City discovered the spelling error in his original request. On December 28, O'Flaherty "became aware" that West had filed

15

suit, and opened a new disclosure request to conduct a new search using the correct spelling and found many responsive records. CP at 132.

The City argues that it complied with the PRA and cured any error because it provided some responsive records to West before the City was served. But the City became aware of West's suit and revisited his request after receiving notice, regardless of service. Moreover, holding that an agency may respond after a suit is filed and notice is given but before service would flout the purpose of the PRA as much as voluntary disclosure after service would.

The City then cites *Hobbs v. State*, 183 Wn. App. at 936, to argue that a City's response may cure an error. But *Hobbs* actually supports West's argument. In *Hobbs*, we stated,

> When an agency diligently makes every reasonable effort to comply with a requester's public records request, and the agency has fully remedied any alleged violation of the PRA at the time the requester has a cause of action (i.e., when the agency has taken final action and denied the requested records), there is no violation entitling the requester to penalties or fees.

*Hobbs*, 183 Wn. App. at 940-41.

Here, the City had not remedied any alleged violation before taking final action and denying West's request. It took final action when it notified West that there were no responsive records and that the request was closed. Although the City's attempt to remedy the violation after West's cause of action accrued may be relevant to any penalties the court may impose, such action did not cure the City's violation. Accordingly, we hold that the superior court erred when it granted summary judgment on the basis that the City cured any error by providing responsive documents after West filed his lawsuit.

CONCLUSION

We hold as a matter of law that the City did not conduct an adequate search under the PRA, that it asserted privilege, and that it did not cure any error by providing responsive records after West filed his lawsuit. Accordingly, we reverse the summary judgment order and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, C.J.

Price, J.