[Nos. 12503-0-II; 12662-1-II. Division Two. September 12, 1989.]

TACOMA NEWS, INC., *Respondent,* v. TACOMA–PIERCE COUNTY HEALTH DEPARTMENT, ET AL, *Appellants.*

*Patricia D. Rourke* and *McCarthy, Holum, Causseaux & Rourke,* for appellants.

*William E. Holt* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for respondent.

REED, J.—The Tacoma–Pierce County Health Department (Health Department) appeals an order compelling it to disclose to Tacoma News, Inc., d/b/a The Morning News Tribune (TNT), copies of written complaints and other information, pursuant to the public disclosure act, RCW 42.17, regarding an investigation that led to the adoption of temporary ambulance regulations. We affirm the order with modifications.

In March 1988, the Emergency Medical Services (EMS) Division of the Health Department received letters from former emergency medical employees of a particular ambulance service serving the Pierce County area concerning the quality of that service's care. The EMS Division conducted an investigation and interviewed several witnesses, most of whom were EMS providers and many of whom were former employees of the service in question.

No citations were filed against the company following the conclusion of the investigation, but on June 1 the Health Department did adopt temporary ambulance rules and regulations that addressed some of the concerns raised by the complaints. These regulations, which later were made permanent, generally set minimum requirements for equipment, drugs, and service availability to be followed by all

ambulances providing services within Pierce County. The preamble to the regulations states:

> The Board of Health of the Tacoma–Pierce County Health Department finds that a Public Health and Safety Emergency exists in the area of ambulance service in Pierce County, therefore, these rules and regulations shall have full force and take effect immediately upon being adopted.

On July 15, a reporter for the TNT requested "copies of written complaints about ambulance services, filed with the EMS Division, that led to or were considered prior to emergency adoption of ambulance regulations" by the Health Department. The reporter also requested "identification of the specific problem that justified emergency adoption of the regulations, including any written materials identifying or relating to the problem."

The Health Department denied all access to the requested documents, claiming they were exempt under RCW 42.17.310(1)(d). It claimed that the documents contained "specific intelligence information and specific investigative records compiled by the Health Department in its investigative, enforcement and penal capacities," the non-disclosure of which is essential for effective investigations and for the protection of several persons' rights to privacy.

The TNT then filed a complaint seeking disclosure of the requested documents and attorney's fees and damages. At the initial hearing, the trial court apparently made an oral ruling that the Health Department was not required to disclose the documents. On reconsideration, the court changed its position and orally granted the TNT's motion.[1] The Health Department later moved for reconsideration, but after reviewing the documents in camera, the trial court denied that motion and entered an order compelling disclosure of all documents, excepting personal medical information contained therein. The court later ordered

---

[1] The court reportedly reasoned that although the records initially were exempt from disclosure, the Health Department had waived, or was estopped from claiming, that exemption when it used the records for legislative purposes. See our discussion, *infra,* regarding this issue.

nondisclosure of portions of the records containing insurance and confidential patient information. This court granted a stay of execution pending appeal, and accelerated review.

The public disclosure act mandates that state and local agencies make for public inspection and copying, all public records available unless the record falls within one of the act's specific exemptions. RCW 42.17.260. The act is to be liberally interpreted—and its exemptions narrowly construed—to promote full access to public records, in order to assure continuing public confidence in governmental processes and full protection of the public interest. RCW 42.17.010; *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 127–28, 580 P.2d 246 (1978). The agency has the burden of establishing that disclosure of requested records is not required. RCW 42.17.340(1).

Judicial review of the agency's decision is conducted de novo, taking into account the chapter's policy "that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.17.340(2). *In re Rosier,* 105 Wn.2d 606, 609, 717 P.2d 1353 (1986); *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978). At the same time the act also embraces the policy that persons reporting under the chapter should be protected from harassment and unfounded allegations based on information they have freely disclosed. RCW 42.17.010.

I

The Health Department does not dispute that the requested documents are public records[2] but claims, rather, that they fall under RCW 42.17.310(1)(d), which exempts from public disclosure:

---

[2]"'Public Record' includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.17.020(26).

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

Thus, for the requested documents to be exempt, they must be (1) specific intelligence information or specific investigative records, (2) compiled by an investigative, law enforcement, or penology agency, (3) the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy. *See Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 728, 748 P.2d 597 (1988). Our analysis of the Health Department's records follows:

■ First, the documents clearly fall within the ambit of specific investigative records, as they were "compiled as a result of a specific investigation focusing with special intensity upon a particular party." *Laborers Int'l, Local 374 v. Aberdeen*, 31 Wn. App. 445, 448, 642 P.2d 418, *review denied*, 97 Wn.2d 1024 (1982). The affidavit of David Vance, Administrator for the EMS Division of the Health Department, demonstrates that the purpose of the investigation was to shed light on allegations of misconduct and inadequate care leveled against an ambulance company. *Cf. Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 31, 617 P.2d 280 (1983).

■ Second, we hold that the Health Department is an investigative and law enforcement agency. Local health officers are required to "[e]nforce the public health statutes of the state, rules and regulations of the state board of health and the secretary of social and health services, and all local health rules, regulations and ordinances within his jurisdiction". RCW 70.05.070(1). The records themselves, as well as the affidavits of David Vance and Alfred M. Allen, Health Department Director, disclose that the Health Department was acting in this capacity when it investigated the complaints and allegations of misconduct and inadequate care that were filed against the ambulance company.

*See* WAC 248–17–070 (statewide ambulance rules and regulations). Whether or not the ambulance company actually was penalized for violations of any regulations is irrelevant to this consideration; certainly, one cannot reasonably expect that all law enforcement investigations will result in citations or penalties.

The third element of the exemption has two alternative components: nondisclosure of the records must be essential either (a) to effective law enforcement, or (b) for the protection of any person's right to privacy. The Health Department has not established that disclosure of the records would deprive any person of his or her privacy.[3] The second component is the heart of the dispute here. We must determine what information, if disclosed, would render ineffective the Health Department's enforcement of laws and regulations. The Health Department's position that *all* the records must be kept secret is unreasonable. Rather, we find it appropriate to distinguish between the basic facts of the investigation, the names of sources, and the name of the company against which complaints were filed.

The court in *Cowles Pub'g,* 109 Wn.2d at 733, held that the names of complainants, witnesses, and officers involved in an internal investigation of police departments were exempt from public disclosure. The court relied on *Aspin v. Department of Defense,* 491 F.2d 24 (D.C. Cir. 1973), which noted that a major reason for precluding disclosure under the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, was to protect sources of information, regardless of whether the investigation is pending or concluded. The

---

[3]This particular exemption is commonly understood to pertain only to the intimate details of one's personal and private life, and applies only if disclosure (1) would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. RCW 42.17.255; *Spokane Police Guild v. Liquor Control Bd.,* 112 Wn.2d 30, 37–38, 769 P.2d 283 (1989). Disclosure of the investigation might cause inconvenience or embarrassment to the ambulance service under investigation and the sources of information, but will not invade any person's privacy. The only records that are exempt under this clause are those relating to personal medical information, which the trial court ordered not to be disclosed.

*Cowles* court found convincing the following quote from *Aspin*, 491 F.2d at 30:

> If an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. The agency's investigatory techniques and procedures would be revealed. The names of people who volunteered the information that had prompted the investigation initially or who contributed information during the course of the investigation would be disclosed. The possibility of such disclosure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants.

■ First, although concealment of the agency's investigatory techniques is not at issue here, nondisclosure of witness and information source identity is an important means of ensuring the efficacy of Health Department investigations. Disclosing the identities of sources will discourage potential sources from providing important information in the future, and will therefore frustrate the investigative process. The Health Department's affidavits indicate that the witnesses in the investigation provided information voluntarily, but would not have done so without assurances of confidentiality. David Potter, president of the Pierce County Paramedics Association, opined in his affidavit that "the identifying details and names of the people who are involved in this case as complainants and witnesses should not be made public" due to fears of "ostracism or retaliation." Though such fears alone do not make nondisclosure of the information *essential* to effective law enforcement, we recognize that disclosing sources in sensitive cases effectively would dilute law enforcement investigations.

Further, while any promise of confidentiality made by the agency does not override the requirements of the disclosure law, *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 40, 769 P.2d 283 (1989); *Hearst,* 90 Wn.2d at 137, as we have noted, one of the policies of the act is to protect all persons reporting "from harassment and unfounded allegations based on information they have

freely disclosed." RCW 42.17.010. We hold that the legitimate concern for protecting confidential sources of information makes nondisclosure of the Health Department's sources in this case essential to effective law enforcement. The names and other identifying features—such as addresses and current or former positions held and names of employers—of complainants and persons who produced information shall not be disclosed. This may require extensive inspection of the documents by the Health Department, but inconvenience to the agency in disclosing records is not a relevant consideration. RCW 42.17.340(2).

Second, we conclude that nondisclosure of the identity of the ambulance company that was investigated is not essential to effective law enforcement. The Health Department again relies on *Cowles Pub'g*, 109 Wn.2d at 733, where the court held that nondisclosure of the names of police officers against whom complaints were filed was essential to effective law enforcement. The instant case is distinguishable, however, because the investigation was not a sensitive internal investigation that depended upon the trust and cooperation of law enforcement officers within the agency. We are not faced with a potential dilemma where publication of the name of an ambulance driver or paramedic would prevent fellow workers from coming forward. Rather, most of the witnesses who gave information were former employees of the ambulance company and apparently were concerned only with their own identity. Thus, the reasoning of *Cowles* on this point does not apply, and the name of the ambulance company is not exempt. Although there is some risk that disclosure of the company's name will reveal the sources of information, we think the policy favoring disclosure must prevail.

Finally, we hold that nondisclosure of the basic facts surrounding the investigation is *not* essential to effective law enforcement. The Health Department has failed to show how public disclosure of the facts of the investigation would render its enforcement of rules and regulations within its

jurisdiction ineffective.[4] Surely, anytime a source provides information in an investigation, he or she must contemplate that charges might be filed publicly as a result. So long as the identities of complainants and witnesses are not revealed, disclosure of the facts alone will not have a "chilling effect" on the investigation and enforcement process.

## II

The TNT maintains that even if the documents were exempt as investigative records essential to effective enforcement, the Health Department waived or is estopped from asserting that exemption now because the records were used for legislative purposes, *i.e.*, to establish temporary ambulance rules and regulations. The TNT draws an analogy to the "raw facts" theory applicable to the "preliminary draft" exemption under RCW 42.17.310(1)(i).[5] Even if this position were well taken, it would not require discussion because we have determined already that the "raw facts" of the investigation are not exempt. Doubtless, any such rule would not extend to *sources* of information.

## III

■ The Health Department finally challenges the award of attorney's fees to the TNT. It claims the award of fees was not proper because the TNT was not the prevailing party. RCW 42.17.340(3) provides in part:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

---

[4]It is interesting to note that the agencies in *Cowles Pub'g Co. v. State Patrol*, *supra*, voluntarily disclosed the facts surrounding the investigation and claimed only that names of sources and targets of inquiry were exempt.

[5]Under this exemption, factual data contained within otherwise exempt intra-office memoranda used to promulgate policies must be produced; the exemption's purpose, protection of the decisionmaking or deliberative process, does not apply to factual material. *See, e.g., Hearst Corp.*, 90 Wn.2d at 133. The TNT suggests that factual data likewise would not be protected by the exemption in question when investigative records are used to develop regulations.

This language is presumptively mandatory. *See Singleton v. Frost,* 108 Wn.2d 723, 728, 742 P.2d 1224 (1987). The prevailing party is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case. *Stott v. Cervantes,* 23 Wn. App. 346, 348, 595 P.2d 563 (1979). The award of costs and fees was proper because the trial court rendered a judgment giving the TNT the right to inspect and copy the requested records; the limitations put on disclosure were minimal, and the TNT remains the "prevailing party" in this action.

▮ The Health Department also challenges the TNT attorney's time records and the amount of fees awarded. The reasonableness of an award of attorney's fees at the trial level is within the trial court's discretion. *See Allard v. First Interstate Bank of Wash., N.A.,* 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989); *Singleton v. Frost, supra.* Further, the amount of time actually spent by an attorney is not dispositive in determining whether a fee is reasonable. *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 743, 733 P.2d 208 (1987). The trial court declined to award the TNT any damages under RCW 42.17.340(3), but awarded attorney's fees in the amount requested. We find the amount reasonable under the circumstances. We also award the TNT attorney's fees on appeal in the amount of $7,637.50, pursuant to RCW 42.17.340(3) and RAP 18.1.

The order is affirmed as modified, with the deletion of the names and identifying features of all complainants and witnesses.

PETRICH, A.C.J., and WORSWICK, J., concur.

Review denied at 113 Wn.2d 1037 (1990).