# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARLOS BENITEZ, JR., ) | DIVISION ONE |
| Appellant, ) | No. 73626-4-I |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| SKAGIT COUNTY, ) | |
| Respondent. ) | FILED: April 18, 2016 |

DWYER, J. — Prison inmates are not entitled to an award of penalties for an agency's violation of the Public Records Act (PRA), chapter 42.56 RCW, unless the agency acted in bad faith. RCW 42.56.565(1). In this case, Skagit County conceded that it violated the Act, but argued that inmate Carlos Benitez was not entitled to penalties because he failed to demonstrate an issue of fact as to whether the County acted in bad faith. The superior court agreed with the County and awarded no penalties. We affirm.

I

In 2010, a jury convicted Benitez of numerous firearm and drug charges.[1] The court imposed a sentence of 368 months of imprisonment.

In March 2011, Benitez filed a postconviction motion, pursuant to CrR 4.7(h)(3), seeking access to discovery materials in his case  That rule allows

---

[1] State of Washington v. Benitez, Skagit County Superior Court Cause No. 09-1-00867-1.

defense counsel to release a discovery file to a client "after making appropriate redactions which are approved by the prosecuting authority or order of the court." CrR 4.7(h) (3). The State opposed the motion, citing safety concerns for undercover officers associated with his prosecution. The State further argued that the requested documents would reveal strategies used in undercover and multiagency operations, and that Benitez had the ability to disseminate the materials both within and outside the prison. Noting Benitez's history of harassing and threatening conduct, the State maintained that redaction would not eliminate its concerns for the safety of the undercover officers. The State requested a protective order to prevent Benitez from obtaining the discovery file.

In May 2011, the superior court denied Benitez's motion, stating that releasing the records posed a "huge threat to the community and agency safety." See State v. Benitez, noted at 180 Wn. App. 1041, 2014 WL 1692450, at *1. In its order, the court noted that Benitez belonged to a gang engaged in a "sophisticated, ongoing drug and illegal weapons operation," and had connections outside of prison. The court concluded that releasing the records would reveal undercover strategies and would "disadvantage undercover officers, investigations, and the agencies involved." The court emphasized that "the most important concern . . . is for community and law enforcement safety and that the release of the discovery materials would pose a significant threat to the safety of [both.]"

2

On June 17, 2012, Benitez filed a request for public records with the Skagit County Interlocal Drug Enforcement Unit (SCIDEU). He sought the following documents from case "#09-TF048":

1. Any and all application(s) requesting search and seizure, and the warrant(s) associated with the request(s);
2. Any and all application(s) and/or authorization(s) to intercept and/or Record Private Conversation(s) or Communication(s)
3. Any transcript of any recorded Private Conversation and/or Communication(s)

On June 27, Detective L. Craig of the SCIDEU responded by letter, stating: "Additional time is needed to respond to your request. We currently anticipate being able to respond on or around July 24, 2012."

On July 24, Tom Molitor of the SCIDEU again notified Benitez that additional time would be needed to respond. He anticipated "being able to respond by August 3, 2012."

On August 6, Molitor informed Benitez that the first installment of records would be provided upon receipt of Benitez's payment for copying costs. The second installment would be ready on or about September 10, 2012. Molitor added that "we have not been able to locate any transcripts of any recorded private conversation and/or communications as requested in item number 3 of your request."

A few weeks later, Benitez received 28 pages of records. They included an October 2009 search warrant from SCIDEU case #09-TF048. The warrant authorized the search of a residence at 216 South Cherry Street in Burlington, Washington. The remaining documents pertained to Burlington Police

3

No. 73626-4-I/4

Department case #09-B08117, and included an October 2009 search warrant for the same Burlington residence.

On August 21, Benitez informed Molitor by letter that only two of the 28 pages of records related to SCIDEU case #09-TF048. Benitez considered the Burlington search warrant records nonresponsive. He also stated:

> Since you have provided the search warrant pertaining to case number SCIDEU # 09-TF048, all that is needed to complete that portion of my request, is that you provide the affidavit of probable cause in support of that warrant.
>
> With respect to the "authorization to intercept and/or record Private Conversations or Communications," I have a Monthly Report Pursuant to RCW 9.73.230, submitted to the Administrator For The Courts, and signed by Detective Sgt. Chris Coglizer, stating that on 9/17/2009 under case # 09-TF048 @ 1809 hrs, an interception and recording was made. Please provide the authorization to intercept and record the conversation or communication as I have requested.
>
> Finally, I have previously examined a transcript pertaining to the recorded conversation, and listened to the recording itself. If you cannot provide a transcript, please provide a copy of the cd recording.
>
> I believe that my request is quite simple and clear, and I have given your agency sufficient time to provide the records. So I am asking that you provide these records at your earliest convenience.

On August 28, Molitor responded by letter, stating that "additional time is needed to respond to your letter dated August 21, 2012. We currently anticipate being able to respond by September 28, 2012."

On October 5, Molitor again informed Benitez that he needed additional time to respond. Molitor anticipated a response by October 22.

On October 8, Benitez complained to Molitor about the delays, stating:

4

Since I submitted my request, numerous "additional time is needed" estimates have been made without any reasonable explanation. Considering that there has been no explanation for the delays, I have respected your additional time estimates, yet I have not been provided with the records I have requested, with the exception of the non-responsive records.

. . . Please do not delay my request any longer and provide the records. If I do not receive the records or a response from you within 10 days I will . . . be filing a complaint for violations of . . . the Public Records Act.

On October 25, the prosecutor in Benitez's criminal action moved to clarify the court's May 2011 order denying Benitez's postconviction motion for discovery under CrR 4.7. The prosecutor stated that Benitez was attempting to obtain the same materials from other sources and asked the court to clarify the breadth of its May 2011 order.

The next day, the court entered amended findings and conclusions and a protective order "relating to any discovery materials, law enforcement reports and investigative materials *in the possession of defense counsel, the prosecuting attorney or law enforcement.*" (Emphasis added.) In its amended findings, the court found that release of the discovery materials "would endanger the safety of undercover officers and agents, put undercover officers and agents at risk by revealing identifying information, and would be extremely detrimental, if not life threatening, to undercover officers." Benitez appealed this order.

On October 25, SCIDEU informed Benitez that it needed additional time to respond to his records request and set November 8 as the new response date.

On November 8, Molitor sent Benitez the following letter:

5

First off, we apologize if we misunderstood what you were seeking pursuant to your request[ ] dated August 21, 2012 and appreciate your clarification dated August 21, 2012 as [to] what you are specifically seeking. It is our understanding based upon your clarification [that] the remaining documents you are seeking are; (1) the probable cause statement supporting the search warrant pertaining to SCIDEU # 09-TF048; (2) the authorization signed by Sergeant Coglizer on 9/17/2012 to intercept and records communications in regards to SCIDEU # 09-TF048; and (3) a transcript of the actual conversations/communications that were recorded. If we have misunderstood your clarification please let me know.

In terms of your request for the Probable Cause Statement, I am providing you with the first page which is the actual Motion and Affidavit for Search Warrant, however I [am] unable to provide you with the actual Probable Cause affidavit. **These 19 pages are exempt from disclosure pursuant to Court Orders signed by Judge Needy on March 23, 2011, May 25, 2011 and October 26, 2012 (enclosed) finding that release of this information would both hinder effective law enforcement and would jeopardize the personal safety of law enforcement and witness, Superior Court Criminal Rule 4.7, and RCW 42.56.240 (1) and (2).**

In terms of the authorization to intercept communications signed by Sergeant Coglizer on 9/17/2012, **these 3 pages are exempt from disclosure pursuant to Court Orders signed by Judge Needy on March 23, 2011, May 25, 2011 and October 26, 2012 finding that release of this information would both hinder effective law enforcement and would jeopardize the personal safety of law enforcement and witness, Superior Court Criminal Rule 4.7, and RCW 42.56.240 (1) and (2).**

In terms of your request for a copy of the transcript of the actual conversation/communication that were recorded, this office is not in possession of a transcript of the recordings. **We do have one CD containing a voice recording that is exempt from disclosure pursuant to Court Orders signed by Judge Needy on March 23, 2011, May 25, 2011 and October 26, 2012 finding that release of this information would both hinder effective law enforcement and would jeopardize the personal safety of law enforcement and witness, Superior Court Criminal Rule 4.7, and RCW 42.56.240 (1) and (2).**

(Emphasis added.)

On August 15, 2013, Benitez filed this action against Skagit County for violations of the PRA. The complaint alleged the County withheld documents that were "not exempt in their entirety from disclosure within the meaning of the [PRA]." It claimed the County also failed to make records available promptly, state valid exemptions for non-disclosure, provide justification for additional response time, and provide records within the estimated time for production. The complaint alleged the County acted in bad faith and sought an award of statutory penalties, attorney fees, and costs.

On December 10, the County informed Benitez by letter that "although the superior court orders and findings of fact support use of the Public Records Act exemptions for specific intelligence and danger to witnesses, the records you requested can be released with redactions." The County attached the redacted records to its letter.

On April 28, 2014, this court vacated the criminal court's October 2012 order clarifying that its previous order denying Benitez access to his counsel's records also applied to records possessed by the prosecutor and law enforcement. We did so on the ground that the October 2012 order was entered without giving Benitez notice and an opportunity to be heard.

On July 25, Benitez moved for partial summary judgment in his PRA action, arguing that there was no issue of fact as to whether the County violated the PRA.

On July 29, Division Two of this court decided <u>Department of Transportation v. Mendoza De Sugiyama</u>, 182 Wn. App. 588, 330 P.3d 209

7

(2014). Describing the issue before it as "one of first impression," the majority concluded that a protective discovery order not founded on work product or a privilege did not qualify as an exemption under RCW 42.56.290 of the PRA. Mendoza De Sugiyama, 182 Wn. App. at 598. The dissent, on the other hand, concluded that the PRA could not "be used by a litigant to frustrate a discovery order binding that litigant." Mendoza De Sugiyama, 182 Wn. App. at 607 (Bjorgen, J., dissenting).

On August 18, the County responded to Benitez's motion for partial summary judgment. It conceded that "the denied records, properly redacted, should have been provided to Benitez under the [PRA]" when he requested them. The County argued, however, that it had not acted in bad faith in withholding the records and that Benitez was therefore not entitled to penalties under RCW 42.56.565(1). The court entered partial summary judgment for Benitez, stating, "Skagit County violated the [PRA] by denying Benitez' June 17, 2012, request for public records." The court reserved the issue of whether the County acted in bad faith.

In March 2015, the County moved for summary judgment on the issue of bad faith. It claimed it reasonably relied on the court orders in Benitez's criminal action when it denied his request for records under the PRA. In support, it provided a declaration from Deputy Prosecuting Attorney (DPA) Melinda Miller, the prosecutor in charge of the County's PRA matters. She stated in part:

> I learned about Mr. Benitez' first request for investigative
> records . . . in July 2011 . . . . I determined that Mr. Benitez had

8

requested the same records that were the subject of an order issued by the Skagit County Superior Court on May 25, 2011, in <u>State of Washington v. Carlos Benitez</u>, Skagit County Superior Court cause no. 09-1-00867-1. The trial court's order found that Benitez was a member of a gang engaged in a "sophisticated, ongoing drug and illegal weapons operation," that release of the SCIDEU's records, which could then be disseminated in the prison system and beyond through gang connections, would "pose a significant threat to the safety of the community and law enforcement" and place participants in the trial and the undercover officers involved in the investigation and future investigations at risk by revealing strategies used in undercover operations. The order also held that the records should not be disclosed to Mr. Benitez.

> . . . I denied [the initial] request for records. My denial letter . . . explained that the records he sought:

> > . . . are exempt from public disclosure pursuant to RCW 42.56.240(1) and (2), exempting records in order to protect effective law enforcement and to protect witness safety. Additionally, the records are exempt under Washington State Criminal Court Rule 4.7 stating that discovery may only be provided to a defendant upon approval of the prosecuting attorney or order of the court.

Mr. Benitez did not appeal this denial.

> I learned of Mr. Benitez' second request for records . . . shortly after June 17, 2012. Initially[,] records staff thought that Mr. Benitez was seeking records not covered by the trial court's order of May 25, 2011. As a result, some non-SCIDEU records that were not a part of the undercover investigation were disclosed to him. . . . However, Mr. Benitez clarified that he was seeking records prepared by SCIDEU as a part of its undercover investigation.

> Even though Mr. Benitez was requesting a sub-set of the records he had requested in 2011, **I determined to not rely on my prior decision [denying Benitez's 2011 records request] and started a complete and independent review of his June 17, 2012, request.**

> One of the first things I did was to reconsider the Skagit court's 2011 order. I asked DPA Trisha Johnson, who had prosecuted Mr. Benitez and handled his post-trial motions, whether the trial court's order of May 25, 2011, covered the records held by

9

SCIDEU. She determined that she needed to clarify that with the trial court.

I also took a second look at the potential exemptions from disclosure. I determined that the findings in the Skagit court's 2011 order met the requirements for an exemption from disclosure under RCW 42.56.240(1) and (2), which provide:

> The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
>
> (1) **Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the** nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy;
>
> (2) **Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies** . . . if disclosure would endanger any person's life, physical safety, or property. . . .

The requested records met the statutory requirements for "specific investigative records." They contained specific intelligence information and were compiled by law enforcement for a criminal investigation. Also, the Skagit court's 2011 order established a specific rather than a generalized concern for effective law enforcement and endangerment to any person's life. This met the need for a non-generalized finding of concern for safety as set out in Tacoma News v. Tacoma-Pierce County Health Dep't, 55 Wn. App. 515, 522, 778 P.2d 1066 (1989), which also held that "disclosing sources in sensitive cases effectively would dilute law enforcement investigations."

I also reviewed two additional exemptions: (1) RCW 42.56.070(1 ), which provides that an ["]other statute["] can exempt or prohibit disclosure of specific information or records and (2) RCW 42.56.290, which exempts records that "would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts." **I thought that these exemptions would apply because the Skagit Court's order was a discovery order issued under authority of a court rule.**

10

In O'Connor v. Dep't of Soc. & Health Servs., 143 Wn.2d 895, 910, 25 P.3d 426 (2001) the court held that **the civil rules are incorporated into the "other statute" provision of RCW 42.17.260(1). Thus, CrR 4. 7, which the Skagit court relied upon to issue its discovery order barring disclosure of the records held by SCIDEU to Mr. Benitez, qualified as a statutory exemption from the disclosure requirements under the Public Records Act.** This conclusion was supported by City of Fircrest v. Jensen, 158 Wn.2d 384, 394, 143 P.3d 776 (2006), which holds that the adoption of court rules is a legislatively delegated power of the judiciary and "[w]hen a court rule and a statute conflict, the court will attempt to harmonize them, giving effect to both."

. . . .

**Because the court rule authorizing the Skagit court's order fell under the "other statute" exemption, it followed that redaction was not required and the records could be withheld in their entirety.** See Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 262, 884 P.2d 592 (1994) ("[I]f another statute (1) does not conflict with the Act, and (2) either exempts or prohibits disclosure of specific public records in their entirety, then (3) the information may be withheld in its entirety notwithstanding the redaction requirement.")

From all of the information I held, including the detailed findings from the trial court in its 2011 order barring release of the records to Mr. Benitez, **I determined that nondisclosure was essential to effective law enforcement and to the safety of officers and informants.** In this case, based on Mr. Benitez' record of intimidation which I learned from DPA Johnson[2], the very

---

[2] DPA Trisha Johnson alleged in her declaration that Benitez's gang "possessed a sizeable arsenal, including nineteen firearms one of which was a fully automatic machine gun." She further alleged that during Benitez's criminal prosecution,

[i]ndividuals dressed in gang attire and displaying gang tattoos attended Mr. Benitez' trial. Before court and during recesses, they stood outside near the courthouse's two entrances where they could observe persons coming into the courtroom. . . . It appeared that they were attempting to identify witnesses, including the informant in the case. Some jurors reported that the gang members who were attending trial appeared to be observing them as they went to their cars. These jurors expressed concern to the court that their license plate numbers were being taken down.

. . . [T]he day after providing the confidential informant's name to [defense] counsel, I learned that the informant reported being approached by a friend who told him that a "hit" had been placed on him. The friend also reported that he had

11

high risk of retaliation against the undercover officers and informants, including neighbors who provided information about the gang's activities, presented a concern that persons would be unwilling to come forward with information to help in future investigations. I certainly had a grave concern for officer and informant safety.

**However, it was clear that Mr. Benitez' request raised an issue of first impression: whether denial could be on the discovery order. I was not aware that it had been addressed by any court at that time.** . . . Thus, this was not an easy decision to reach. My concern for making the correct decision, which was coupled with a having to deal with a major health issue that involved a significant invasive surgery, is a large part of the reason why I did not make a quick decision on Mr. Benitez' June 17, 2012, request. I took the time to get this right.

**Additionally, I wanted to have the opportunity to raise this issue at a Washington Association of Public Records Officers (WAPRO) conference. One was scheduled for October 2012.**

. . . .

At the [conference], I explained the facts and what law I had researched before "round tabling" my question about how the 2011 court order affected Mr. Benitez' 2012 request for disclosure of records affected by that order. The consensus of the law enforcement group confirmed what I had concluded: that the trial court's order set out the facts necessary to establish two exemptions under RCW 42.56.240. The group also concurred that CrR 4.7 qualified as an "other statute" under RCW 42.56.070(1), exempt records that fall within an "other statute which exempts or prohibits disclosure of specific information or records" and that the records could be withheld in their entirety, without redaction.

**In addition to the WAPRO forum, I took the time to discuss these exemptions, several times, with the county's Records Management Coordinator in an effort to ensure that I had not missed anything.**

---

been asked where the informant lived. As a result, the informant and his family relocated to another residence until the trial was completed.

On October 26, 2012, DPA Johnson provided me with a copy of another post-trial order from the Benitez case. . . . [I]t clarified that the discovery order applied to discovery held by SCIDEU and the prosecutor, [and] it reinforced my conclusion that the records Mr. Benitez sought were exempt from disclosure under the PRA.

**Based on my research and on the advice of other municipal attorneys who advise their counties and cities on the Public Records Act, I determined that the records identified in Mr. Benitez' June 17, 2012, request should not be released to him. . . .**

. . . .

Making the correct decision was always paramount in this matter. Given the judicial precedent available to me at the time, I believe I made the correct decision when I advised the SCIDEU to deny Mr. Benitez' request of June 17, 2011.

(Emphasis added.)

Benitez opposed summary judgment, arguing that an issue of fact existed as to whether the County acted in bad faith. He maintained that the County's delays, nonresponsive initial disclosure, discovery of records it initially claimed it could not find, and assertion of inapplicable exemptions demonstrated bad faith. He further alleged that "the County's concern for the safety of the public, officers, and informants was not its true motive for denying [the] records request." In a supporting declaration, Benitez alleged, among other things, that DPA Miller's decisions were unreasonable under then-existing case law and that the County had repeatedly violated the PRA's procedural requirements.

On May 18, the court granted summary judgment, concluding in part that Benitez "fail[ed] to meet his burden of proving that Skagit County acted in bad

faith when it denied his June 17, 2012, request for public records." Benitez appeals.

II

The sole issue on appeal is whether the superior court erred in granting summary judgment on Benitez's claim that the County acted in bad faith and, therefore, must pay penalties under the PRA. We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. Gronquist v. Dep't of Corr., 159 Wn. App. 576, 582-83, 247 P.3d 436 (2011). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). In determining whether a genuine issue of material fact exists, we view the facts in a light most favorable to the nonmoving party. Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (citing Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985)). The nonmoving party "must set forth specific facts that sufficiently rebut the moving party's contentions" and "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986) (citing Dwinnell's Cent. Neon v. Cosmopolitan Chinook Hotel, 21 Wn. App. 929, 937, 587 P.2d 191 (1978)).

We also review challenges to government action under the PRA de novo. Gronquist, 159 Wn. App. at 582. The PRA requires state and local agencies to

disclose public records upon request, unless the record falls within a specific PRA exception or other statutory exemption. RCW 42.56.070(1); Bellevue John Does 1–11 v. Bellevue Sch. Dist. No. 405, 164 Wn.2d 199, 209, 189 P.3d 139 (2008). We liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. RCW 42.56.030. An agency claiming an exemption "bears the burden of proving that the documents requested fall within the scope of the exemption." Cowles Publ'g Co. v. Spokane Police Dep't, 139 Wn.2d 472, 476, 987 P.2d 620 (1999). When, as here, the person claiming PRA violations is an inmate when the action is filed, no penalties will be awarded "unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1).

III

Benitez contends the court erred in granting summary judgment on the issue of bad faith. He contends DPA Miller's decision regarding his records request was based on an indefensible view of the law. We disagree.

"Bad faith" is defined as "'a wanton or willful act or omission by the agency.'" Adams v. Dep't of Corr., 189 Wn. App. 925, 938-39, 361 P.3d 749 (2015) (quoting Faulkner v. Dep't of Corr., 183 Wn. App. 93, 103, 332 P.3d 1136 (2014), review denied, 182 Wn.2d 1004 (2015)). Bad faith is more than mere negligence or a mistake, but it need not be intentional. Faulkner, 183 Wn. App. at 102. Thus, an agency is not guilty of bad faith "for making a mistake in a record search or for following a legal position that was subsequently reversed." Francis v. Dep't of Corr., 178 Wn. App. 42, 63, 313 P.3d 457 (2013), review

15

denied, 180 Wn.2d 1016 (2014). Nor is it bad faith to withhold the names of police officers if the motivation for withholding is "to protect the safety . . . of [the] officers" and the basis for withholding is "'not so farfetched as to constitute bad faith.'" Francis, 178 Wn. App. at 54 (quoting King County v. Sheehan, 114 Wn. App. 325, 356-57, 57 P.3d 307 (2002)); Faulkner, 183 Wn. App. at 105. An agency acts in bad faith when it acts "unreasonably with utter indifference to the purpose of the PRA." Faulkner, 183 Wn. App. at 105. Thus, failure to conduct a reasonable search for records, a "cursory search and delayed disclosure well short of even a generous reading of what is reasonable under the PRA," or withholding based on an indefensible view of the law may support a finding of bad faith. Francis, 178 Wn. App. at 63-64; Faulkner, 183 Wn. App. at 105; Adams, 189 Wn. App. at 945-52.

Here, DPA Miller stated in her declaration that she withheld the records because she determined they were exempt from disclosure under several statutory exemptions. First, she pointed to RCW 42.56.240, which provides:

> The following investigative, law enforcement, and crime victim information **is exempt from public inspection and copying under this chapter:**
>
> (1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the **nondisclosure of which is essential to effective law enforcement** or for the protection of any person's right to privacy;
>
> (2) Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies . . . **if disclosure would endanger any person's life, physical safety, or property**. . . .

(Emphasis added.) DPA Miller concluded the records in this case fell within both of these exemptions. She noted, correctly, that the criminal court found the records would pose a "threat to the community and agency safety" and endanger the lives of undercover officers in light of Benitez's gang activity and connections in and outside of prison. In light of these threats and safety concerns, we cannot say DPA Miller's interpretation and application of RCW 46.56.240 was indefensible or so farfetched as to constitute bad faith.

Miller also concluded that the records were not subject to the PRA's redaction requirement. She acknowledged that the PRA generally does not allow withholding records in their entirety, and that partially exempt records must be released in redacted form. RCW 42.56.210(1); Progressive Animal Welfare Soc'y, 125 Wn.2d at 261. She concluded, however, that redaction was not required in this case because the records arguably fell within other exemptions warranting total nondisclosure. One of those exemptions, known as the "other statute" exemption, provides:

> Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (6) of this section, this chapter, **or other statute which exempts or prohibits disclosure of specific information or records**.

Former RCW 42.17.260(1) (1997) *recodified as* RCW 42.56.070(1) (LAWS OF 2005, ch. 274, § 284) (emphasis added). Under this provision, records need not be redacted if an "other statute" prohibits disclosure of public records in their entirety. Progressive Animal Welfare Soc'y, 125 Wn.2d at 262. Because court rules are treated as "other statutes," O'Connor v. Dep't of Social & Health Servs.,

143 Wn.2d 895, 910, 25 P.3d 426 (2001) (civil rules are incorporated into the "other statute" exemption), and because the protective order in Benitez's criminal case was issued pursuant to CrR 4.7,[3] Miller concluded that the records in this case were exempt from disclosure in their entirety and the redaction requirement did not apply. Benitez failed to demonstrate an issue of fact as to whether Miller's conclusion was defensible.

In his declarations below, Benitez contested few facts and focused instead on the legitimacy of Miller's legal grounds for withholding the records. He argued that Miller's legal analysis was flawed because the "other statute" exemption applies only when another statute or court rule *expressly* exempts specific records. But our courts have held that "[a]n exemption may be found in an 'other statute' even if it is not stated explicitly." White v. Skagit County, 188 Wn. App. 886, 890-91, 355 P.3d 1178 (2015) (citing authority existing at the time of DPA Miller's decision), review denied, ___ Wn.2d ___ (Mar. 4, 2016); see also White v. Clark County, 188 Wn. App. 622, 636-37, 354 P.3d 38 (2015) (statutes "inconsistent with [disclosure under] the PRA" came within "other statute"

---

[3] CrR 4.7 provides in part:
   (e) **Discretionary Disclosures.**

   . . . .
   (2) The court may condition or deny disclosure authorized by this rule if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweigh any usefulness of the disclosure to the defendant.

   . . . .
   (h) **Regulation Discovery.**

   . . . .
   (4) *Protective Orders.* Upon a showing of cause, the court may at any time order that specified disclosure be restricted or deferred, or make such other order as is appropriate.

exemption), review denied, ___ Wn.2d ___ (Mar. 4, 2016); John Doe v. Wash. State Patrol, No. 90413-8 (Wash. April 7, 2016) (dissenting opinion citing cases).

Furthermore, when Miller made her decision to withhold the records, no court had yet addressed whether a *protective order* issued under a court rule could fall within the "other statute" and/or "litigation" exemptions in the PRA, or could otherwise preclude disclosure under the PRA. Former RCW 42.17.260(1); RCW 42.56.070(1); RCW 42.56.290.[4] That question first arose in Mendoza De Sugiyama, 182 Wn. App. 588. In a split decision, the majority concluded that a protective order does not exempt records from disclosure under the PRA unless the records are expressly not discoverable under pretrial discovery rules. The majority acknowledged, however, "that *reasonable minds might differ and reasonable minds might hold* that the government's interest in conducting its trials and handling discovery is a vital government interest that outweighs the interests of public disclosure under the PRA." Mendoza De Sugiyama, 182 Wn. App. at 604 (emphasis added). The dissent framed the issue as "whether the PRA may be used by a litigant to frustrate a discovery order binding that litigant." Mendoza De Sugiyama, 182 Wn. App. at 607 (Bjorgen, J., dissenting). The dissent concluded that records made unavailable by a protective order are exempt from the PRA under the "litigation" exception, RCW 42.56.290. Mendoza De Sugiyama, 182 Wn. App. at 609 (Bjorgen, J., dissenting). Mendoza De

---

[4] RCW 42.56.290—the "litigation" or "controversy" exemption—states:
Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt from disclosure under this chapter.

Sugiyama thus demonstrates that DPA Miller's assessment of the law was not so farfetched as to constitute bad faith.

Given the uncertainties in the relevant law, the serious safety concerns expressed by the court issuing the protective order, and the detailed and largely uncontroverted declarations submitted by the County on summary judgment, the superior court did not err in concluding there were no genuine issues of fact as to whether DPA Miller's decision was made in bad faith.

IV

Benitez next contends that even if DPA Miller's interpretation of the law was defensible, the County's delays in processing his records request established an issue of fact as to bad faith. Specifically, he contends the delays violated the PRA requirement of the "fullest assistance" and the "most timely possible action" on records requests. RCW 42.56.100. We disagree for several reasons.

First, any delays occurring more than one year before Benitez filed suit on August 15, 2013, need not be considered since claims based on those acts are barred by the one-year statute of limitations. RCW 42.56.550.

Second, the County's responses seeking additional time were expressly authorized by RCW 42.56.520, which states:

> Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request. In acknowledging receipt of a

> public record request that is unclear, . . . an agency . . . may ask the requestor to clarify what information the requestor is seeking.

(Emphasis added.) While repeated requests for additional time could, in extreme circumstances, demonstrate bad faith, the PRA does not require an agency to strictly comply with its estimated record production dates. Andrews v. Wash. State Patrol, 183 Wn. App. 644, 651-52, 334 P.3d 94 (2014), review denied, 182 Wn.2d 1011 (2015). Nor does the PRA "limit the number of extensions an agency may require to respond to a request." Andrews, 183 Wn. App. at 652. Rather, the Act "simply requires an agency to provide a 'reasonable' estimate, not a precise or exact estimate, recognizing that agencies may need more time than initially anticipated." Andrews, 183 Wn. App. at 652 (emphasis added); Forbes v. City of Gold Bar, 171 Wn. App. 857, 864, 288 P.3d 384 (2012) ("The operative word is 'reasonable.'"). Even when timelines are missed, the PRA is not violated if the agency responds "with reasonable thoroughness and diligence." Andrews, 183 Wn. App. at 653.

Here, the County's largely uncontroverted declarations demonstrate that its delays and requests for additional time were not made in bad faith. Tom Molitor alleged in his declaration that Benitez's records request was immediately forwarded to DPA Miller. She told Molitor she "was concerned about whether the requested records could be released" and needed time "to research the legal issues." In her declaration, Miller said she exercised caution because disclosure carried a "very high risk of retaliation against the undercover officers and informants, including neighbors who provided information about the gang's

activities." Accordingly, at Miller's direction, Molitor informed Benitez on several occasions that the County needed additional time to process his request. Miller used the additional time to investigate the law and facts before making her decision. She concluded she needed to clarify whether the criminal court's protective order applied to records in the possession of the County and law enforcement. She did not receive that clarification until just before making her final decision to withhold the records. Miller also sought and received input from fellow public records officers attending a conference in the weeks immediately preceding her decision.

While Miller's investigation took several months,[5] it was not unreasonably lengthy considering all the circumstances. There is no genuine issue of fact as to whether the County's requests for additional time were made in bad faith.

We also reject Benitez's claim that the County's initial records installment showed bad faith and a genuine issue of fact for trial. Benitez contends most of the records provided in the initial installment were nonresponsive. While it is true that many of the records were not associated with the case number Benitez specified in his request, all of the records concerned October 2009 search warrants for the same Burlington residence. There is no evidence in the record supporting Benitez's claim that the County's inclusion of these additional, factually related records was done in bad faith. Nor is there evidence supporting his claim that a duplicate record and two blank pages in the initial installment, or

---

[5] Benitez received the initial installment of records within approximately two months of his request. He received a final decision on the remaining records several months after that.

22

the County's claimed inability to locate certain records, were acts of bad faith rather than mere mistakes.

Benitez also contends there is an issue of fact as to whether "[t]he County acted in bad faith when it failed to provide [him] with an explanation of how the claimed exemptions applied." Br. of Appellant at 29. Again, we disagree.

RCW 42.56.210(3) requires a "brief explanation of how the exemption applies to the record withheld." The explanation need not be elaborate but should allow a requestor to make a threshold determination of whether the agency has properly invoked the exemption. WAC 44-14-04004(4)(b)(ii). In a letter to Benitez, the County explained that the withheld records were "exempt from disclosure pursuant to Court Orders signed by Judge Needy on March 23, 2011, May 25, 2011 and October 26, 2012 (enclosed) finding that release of this information would both hinder effective law enforcement and would jeopardize the personal safety of law enforcement and witness, Superior Court Criminal Rule 4.7, and RCW 42. 56.240 (1) and (2)." This explanation was sufficient. See White, 188 Wn. App. at 900 (where images of voted ballots were withheld, county's explanation that "RCWs 29A.60.125, 29A.60.110 and WAC 434-261-045 . . . require ballots to remain in secure storage unless opened by a court or canvassing for a specific authorized purpose" was sufficient). But even were the explanation insufficient, nothing in the record supports a conclusion that the deficiency was a result of bad faith.

Benitez's remaining claims are either unpersuasive or rejected on the ground that they are raised for the first time on appeal. See Mitchell v. Dep't of

23

No. 73626-4-I/24

<u>Corr.</u>, 164 Wn. App. 597, 277 P.3d 670 (2011) (refusing to consider argument raised in PRA case for the first time on appeal).

Affirmed.

We concur: